[No. 5370.]
[No. 3019 C. A.]

## HUGHES v. KERSHOW ET AL.

**1. Real Property—Fixtures—What Constitute.**

Where a lease of city lots provided that all improvements by the lessee should belong to him, and might be removed during the last sixty days of the lease if he had paid all rents and taxes to be paid by him, a five-story brick building erected thereon by the lessee remained personal property during the lease; but, on failure to remove it as provided therein, by operation of law it became a fixture and part of the real estate.—P. 213.

**2. Real Property—Improvements—Liens—Loss of Lien.**

A lien for money advanced to the lessee for improvements made on leased premises, is lost by the lessee's loss of the improvements on account of failing to remove them before the expiration of the lease, as provided therein, since such lien attached only to the interest of the lessee.—P. 214.

**.3. Same—Renewal of Lease Without Notice.**

One who claims a lien on improvements on leased land for money advanced therefor, cannot claim that a renewal of the lease without her knowledge invested her with an absolute lien on the improvements freed from limitation to the interest of the lessee, since she is presumed to have known the date of the expiration of the lease, and was put on inquiry when the lessee failed to remove the improvements before the expiration; and, having failed to enforce her lien during the life of the lease, she must be held to have acquiesced in the renewal of the lease and consented to the extension, intending to hold her lien subject thereto, for she can occupy no stronger position than the tenant.—P. 215.

**4. Guardian and Ward—Authority of Guardian.**

A guardian of infants, as lessor of premises, has no power, in the absence of express authority from the court, on the expiration of the lease, to agree to a lien on the improvements

made by the lessee for moneys advanced him for that purpose; nor would such verbal agreement be binding even upon himself, since it was a mere verbal promise to answer for the debt of another.—P. 217.

5. Liens—Enforcement—Laches.

A delay of five years in bringing an action to enforce a lien on improvements on leased premises for moneys allowed therefor, and almost five years more in bringing the action to trial without excuse, will defeat the claim.—P. 218.

6. Same—Pleading—Laches.

The defense of laches may be interposed in an action in equity to enforce a lien on property without being specially pleaded.—P. 218.

*Appeal from the District Court of the City and County of Denver.*

*Hon. Peter L. Palmer, Judge.*

Action by Margaret Hughes against Carlton M. Kershow, J. Henry Kershow as the guardian and trustee of Carlton M. Kershow, J. Henry Kershow as the executor of Max Howard Kershow, deceased, and W. M. Scott as administrator of Paul T. Hughes, deceased. From a judgment for defendants, plaintiff appeals. *Affirmed.*

Messrs. WHITFORD & MAY, for appellant.

Messrs. WELLS & CHILES, for appellees.

Jeremiah Kershow died seized of three lots at the corner of Sixteenth and Market streets, Denver. These lots became the property of his minor sons. J. Henry Kershow, as guardian for such minors, in 1882 leased the same to Paul T. Hughes for a period ending April 23rd, 1893. By the terms of the lease "all erections and improvements and repairs made by party of the second part at any time during said term erected upon said premises" were to remain the property of the tenant Hughes; and within the sixty days last preceding the expiration of the time

fixed in the lease, Hughes was given the privilege of removing such erections, improvements, etc., provided he had then "discharged all rents, taxes and assessments" payable by him under the contract.

The building first erected upon the premises was destroyed by fire in 1886. The insurance money not being sufficient to re-erect the kind of a structure desired, Hughes borrowed from appellant, who was plaintiff below and who was his wife, some $10,000.00 or $15,000.00 with which to finish the same. Mrs. Hughes took no notes or other evidences of this indebtedness, nor did she take any written security therefor. She asserts, however, that Hughes gave her a verbal lien upon the building as such security. And she further claims that after she had advanced some $3,000.00 or $4,000.00, and when the brickwork was only partly completed, J. Henry Kershow, the guardian, assured her that if she would continue furnishing the money necessary to complete the building, he would see that she was repaid the same, and that she should have a lien on the improvement for all of the money so furnished.

The building, being a brick structure covering the entire three lots and with a foundation capable of supporting five stories, was then completed, plaintiff furnishing the money. The lower part was used for stores, the upper part was finished off for and used as a theater.

In December, 1892, four months before the expiration of the lease, owing to the hard times and other causes, Kershow, the guardian, and Hughes, the tenant, arranged for and completed the execution of a new lease extending the term of the tenancy to June 30th, 1896, at a higher rental for the ground. Subsequently certain litigation arose between the parties, which was compromised and disposed of early in 1896.

Through such compromise and settlement Hughes received a rebate of several thousand dollars upon rents due and $2,000.00 in cash, and turned the possession of the premises over to his lessors.

On the 16th of June, 1898, plaintiff began the present action for the enforcement of the lien so claimed by her upon the building. The answer of J. H. Kershow, guardian, was filed on March 11th, 1899. The cause came on for trial on May 19th, 1903, decision being rendered August 17th of the same year.

From the decree, which was in favor of defendants, plaintiff prosecuted the present appeal.

Mr. JUSTICE HELM delivered the opinion of the court:

The building erected by Paul T. Hughes upon the three lots at the corner of Sixteenth and Market streets, Denver, leased from the heirs of Jeremiah Kershow, through J. H. Kershow, guardian, is clearly within the class of improvements known in law as "fixtures." This structure, as re-erected after the fire, was of brick, covering the entire three lots and with a foundation sufficiently strong to support a five-story building. The ground floor was divided into storerooms and so used, while the upper portion was finished off for theatrical purposes and subsequently became known as the "Haymarket Theater."

But the parties invested this structure with the character of personalty. In the lease it was expressly stipulated that all improvements erected upon the property by the lessee should belong to him, and that he might remove the same during the sixty days last preceding the expiration of the lease, provided he had paid all rents, taxes and assessments agreed to be discharged by him. Thus, by express

contract, the building mentioned became personal property during the life of the lease.

This provision was for the benefit of the lessee; but to avail himself of such benefit it was incumbent upon him to remove the building before expiration of the contract. If he failed to do so in accordance with the terms specified, then, upon expiration of the contract, by operation of law the building ceased to be personalty; its character as a fixture attached and it at once became a part of the real estate.

During the existence of the lease mentioned, plaintiff advanced to Hughes, the tenant, who was her husband, an aggregate of about $15,000.00 with which to rebuild or reconstruct the building first placed upon the leased ground and previously destroyed by fire. The loans thus made were not evidenced by writing, but, according to plaintiff's testimony, Hughes, as security therefor, gave her a verbal lien upon his interest so retained in the building.

It is not necessary for the purposes of this case to consider the sufficiency of a lien thus created. For, assuming that this lien was valid and binding as between the parties, it could only extend to the interest held by Hughes in the property. And when, for any reason, this interest legally terminated, plaintiff's lien thereon also terminated. Hence, as above observed, if Hughes allowed the period fixed in the lease to expire without payment of rents, taxes and assessments and removal of the structure from the lots, as therein provided, the building became a part of the realty; that is to say, the inchoate right or claim of his lessors thereto ripened into complete ownership, and title vested in them.

"It is hardly necessary to add that the plaintiffs can claim no better title to the property in controversy than that which was vested in the tenant

under whom they claim as mortgagee. When the mortgage was made, the building and machinery were fixtures annexed to the realty of the defendant by his tenant, and which the defendant had then the inchoate right to claim as part of the freehold if not seasonably disannexed before the term was ended."— *Talbot v. Whipple,* 14 Allen 177.

"Although the tenant possessed the right of removal, he was bound to exercise it if at all before his term expired or within the period limited by his lease, or at all events, before quitting possession of the real estate upon which the trade fixtures were situated."—*Mass. Nat. Bank v. Shinn,* 18 N. Y. App. Div. 282; *Fitzgerald v. Anderson,* 81 Wis. 342; *Smith v. Park,* 31 Minn. 70; *Free v. Stuart,* 39 Neb. 225.

The giving of the new lease a few months before the original lease expired, extending the tenancy period on practically the same terms, did not operate to invest plaintiff with an absolute lien upon the structure, freed from limitation to the interest of Hughes. She says that this action was taken without her knowledge or consent, but she knew, or must be presumed to have known, the date fixed for expiration of the original lease. When her husband failed to take steps for removal of the building during the last sixty days of such period, she was put upon inquiry which would have disclosed the existence of the new contract; and if she intended to assert her lien under the expiring lease, she should have taken appropriate steps so to do. Failing to assert her lien within the time fixed by that contract, she must at least be held to have acquiesced in the new lease and consented to the extension, intending to hold her lien subject thereto. She certainly can occupy no stronger position than that her lien continued to cover Hughes' interest under the new lease

with the same force and effect it possessed under the former lease.

The conditions here are not analogous to the illustration used by counsel for appellant, of two chattel mortgages given at different dates upon the same property. Undoubtedly in such case a release, of the senior mortgage would invest the junior mortgage with a paramount lien, even though a new mortgage were taken for the earlier debt. The lien of plaintiff under consideration being limited to the conditional interest reserved by Hughes in the building in the first lease, the only question arising is whether this lien perished altogether upon expiration of that lease; or whether, under all the circumstances, we can treat it as attaching to the interest of Hughes under the new lease.

But when in 1896, shortly before the expiration of the second lease, Hughes surrendered the tenancy and turned the property over to his lessors under an arrangement for distribution of accumulated rents, his title as tenant finally terminated, and all right or interest held by him in the building ceased. The character of the building as personalty disappeared; it became a part of the real estate, and ownership vested in the landlord.

It might, perhaps, be held that when the interest of Hughes thus ceased, the lien of plaintiff upon that interest also ceased. But, giving plaintiff the benefit of the most favorable view we could possibly adopt, her lien could not have continued beyond June 30th, following, the date at which the second lease expired by its own terms. And when she allowed this period to pass and the possession to be retained by the landlord, without attempting to assert any right or interest claimed under the lien, most assuredly the lien itself became ineffective and non-enforceable. In law she could not sit quietly by for two years, as she did,

before taking steps to enforce her lien, even had she possessed a right to such enforcement at the expiration of the period fixed by the second lease.

But counsel for appellant invite our attention to the alleged agreement of J. H. Kershow, guardian for the minor heirs (owners of the lots), to recognize her claim or lien against the building; and they argue that by virtue of this agreement her status and rights, as above indicated, were in some way modified, so that her lien upon the building was preserved and she was entitled to enforce the same in the present action.

This agreement of the guardian is not clearly established by the evidence; it is denied by him; it is in certain respects, which we will not now enumerate, unreasonable and improbable; the trial court declined to determine the matter, saying that it was not material in view of his conclusion otherwise touching the case.

But let us assume that the guardian did give plaintiff the assurances to which she testifies. His agreement that her advancements to Hughes should be returned, was a mere verbal promise to answer for the debt of her husband, and was not binding even upon himself. And as guardian he had no power, certainly without express authority from the court, which nowhere appears, to place a lien or incumbrance upon the estate of his wards through such an agreement. His assurance, if he gave such an assurance, can only be regarded as an acquiescence by him in plaintiff's claim of a verbal lien upon the interest of Hughes in the building for moneys advanced by her.

The foregoing conclusions require an affirmance of the decree under review, and it is not necessary to consider the additional questions discussed in the briefs and arguments on file.

If the view urged by counsel for appellant were correct, that plaintiff's lien was entirely independent of and unsupported by the second lease, her claim to relief would also be defeated by her laches. The first lease expired, according to its own terms, in April, 1893. Suit was not instituted by plaintiff until June, 1898, over five years after her cause of action, according to counsel's view, accrued. But this is not all. After instituting the action she did not bring it to trial until May, 1903, nearly five years later. No sufficient excuse—if, indeed, there could be one—appears in the record for either of these delays.

This is an action in equity for the enforcement of a lien against property, and the wise and beneficent doctrine of laches is applicable, even though no such special plea is formally interposed by answer.

In support of the foregoing suggestions in relation to plaintiff's laches, viz.: That no formal plea thereof was necessary; that the delay in commencing this action should, under counsel's assumption above stated, operate as a bar thereto; and that such unreasonable delay in prosecuting a suit, even though it be commenced in time, might, in and of itself, bar a recovery in equity, we cite the following authorities: *Hagerman v. Bates,* 5 Colo. App. 402; *Hagerman v. Bates,* 24 Colo. 80; *Sullivan v. Portland R. R. Co.,* 94 U. S. 811; *Johnson v. Standard Min. Co.,* 148 U. S. 370; *McKnight v. Taylor,* 1 Howard *168; *Terry v. Fontaine's Adm'r et al.,* 83 Va. 455; *Great West Min. Co. v. Woodmas of A. Min. Co.,* 14 Colo. 90; *Graff v. Town Co.,* 12 Colo. App. 112.

The judgment of the court below must be affirmed.                                    *Affirmed.*

Chief Justice Steele and Mr. Justice Maxwell concurring.