[Civ. No. 3282.    Third Appellate District.—June 9, 1927.]

## BOND INVESTMENT COMPANY (a Corporation), Respondent, v. FLOYD F. BLAKELEY, Appellant.

[1] FIXTURES — PERMISSION TO REMOVE — BURDEN OF PROOF. — Under section 1013 of the Civil Code, the burden is on one who seeks to remove property actually affixed to the land of another to show that it was placed there with permission to remove it, and in the absence of proof of such permission the presumption is that it belongs to the owner of the realty.

[2] ID.—PERMANENCY OF—METHOD OF DETERMINING—INTENTION.—In determining whether buildings are permanent fixtures on land, within the definition of section 660 of the Civil Code, it must be considered whether the structures were annexed to or imbedded in the soil, if they are adapted to the purpose for which the property on which they are located is intended to be used, and if it was the intention that the buildings should become permanent fixtures when they were constructed.

[3] ID.—DETERMINATION OF FACT.—Whether property affixed to land comes within the definition of "fixtures" must be determined by the particular facts of each case.

[4] ID.—BUILDINGS—EVIDENCE.—In determining whether a building is a permanent "fixture" on land, the entire manner of its construction, its character, value, and adaptability to the purposes for which the land is used, and the expressed intent as to whether or not it was to become permanent, should be taken into consideration.

[5] ID.—DECLARATIONS OF OWNER—EVIDENCE.—Bare declarations of the owner of the land and the constructor of improvements thereon

---

2.  See 12 Cal. Jur. 563; 11 R. C. L. 1059.

3.  See 12 Cal. Jur. 561.

4.  What are fixtures, notes, 14 Am. Dec. 303; 17 Am. Dec. 686; 24 Am. Dec. 726. See, also, 11 R. C. L. 1059 et seq. Character of building placed by consent on another's land as real or personal property in absence of agreement as to its character, note, 14 L. R. A. (N. S.) 439.

do not necessarily control in determining whether buildings are fixtures, but all the facts, circumstances, conditions, and declarations should be considered.

[6] ID.—FOUNDATIONS OF BUILDINGS—EVIDENCE.—Buildings are not merely temporary because constructed on mudsills, since their foundations are not conclusive in determining whether they are fixtures or not.

[7] ID.—STRUCTURES RESTING ON SOIL—EVIDENCE.—That the mudsills or timbers, upon which a house is constructed, rest upon the surface of the soil without disturbing the earth is not conclusive in determining whether the structure is or is not a fixture.

[8] ID.—REMOVAL OF BUILDINGS—CONSENT OF OWNER—EVIDENCE.— Whether the owner of land consents to the removal of buildings erected thereon by another is a question to be determined from all the facts and circumstances of the particular case.

[9] APPEAL—FINDINGS—EVIDENCE—SUPPORT OF JUDGMENT.—A judgment on findings, supported by substantial evidence in the record, should be affirmed.

[10] FIXTURES — REMOVAL OF BUILDINGS — INJUNCTION — EVIDENCE — FINDINGS.—In this action to enjoin removal of buildings from land, the evidence was sufficient to support the finding of the trial court that the buildings were affixed to and an integral part of the realty and not temporary structures erected with the land owner's consent to remove them at will.

[11] ID.—PERMANANCE OF FIXTURES—PROPERTY OF FATHER AND SON. Where a son, by permission, builds a house for his own use upon his father's land, with the expectation of becoming the owner of the estate, the improvements become a part of the realty, and cannot be removed.

---

(1) 26 C. J., p. 654, n. 30.   (2) 26 C. J., p. 652, n. 17, p. 667, n. 28.   (3) 26 C. J., p. 653, n. 22.   (4) 26 C. J., p. 656, n. 40. (6) 26 C. J., p. 661, n. 82.   (7) 26 C. J., p. 671, n. 53.   (8) 26 C. J., p. 680, n. 51.   (9) 4 C. J., p. 878, n. 82.   (11) 26 C. J., p. 680, n. 52.

APPEAL from a judgment of the Superior Court of Kings County. K. Van Zante, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

7. See 12 Cal. Jur. 564.
9. See 2 Cal. Jur. 921.

Clark Clement for Appellant.

John G. Covert for Respondent.

THOMPSON (R. L.), J., *pro tem.*—This is an appeal from a decree finding that plaintiff is the owner and entitled to the possession of 650 acres of land in Kings County, together with a certain dwelling-house and machine shed, and restraining the removal of said buildings.

Appellant claims that, as a mere licensee, he constructed these buildings in question, with the express consent of the owner of the land, for him to remove them at will, and asserts that there is no evidence to support the findings of the trial court to the effect that these buildings were "an integral part of the realty," or permanently resting thereon.

Frank Blakeley, the father of appellant, was the owner of the land in question at and prior to April 5, 1921, upon which date he and his wife, Clara M. Blakeley, executed a deed of trust to the Title Guarantee and Trust Company, as trustee, to secure a loan of $25,000, borrowed from the Mortgage and Guarantee Company, named in said trust deed as the beneficiary, which mortgage deed was duly recorded May 10, 1921. Subsequently, on October 30, 1922, Frank Blakeley and wife deeded this property to their son Floyd and his brother, which deed was also recorded on November 1, 1922. The appellant was engaged in an extensive enterprise of farming in the vicinity of Tulare Lake, but had no interest or part in farming his father's land, which is involved in this action. The evidence of the appellant and his father was to the effect that about June 1, 1921, express consent of the father was given to the son to remove the buildings "whenever the appellant wanted to." Subsequently appellant constructed on said premises a substantial five-room dwelling-house of the value of about $2,000, and also built a large machine shed some 40 by 80 feet in dimensions, valued at $1,000. These structures were built on heavy mudsills without disturbing the surface of the ground to any extent. They were constructed as a part of a camp for the accommodation of appellant's family and as a convenience in which to store his machinery, while he was farming in the vicinity. Subsequent to the construction of these buildings the trust

deed from Blakeley to the Title Guarantee and Trust Company was duly foreclosed and sold by the trustee to the Mortgage and Guarantee Company on August 9, 1924. On August 30, 1924, said purchaser sold and conveyed this land to Charles Scott, Jr., who, in turn, sold and conveyed it to this plaintiff by deed dated September 2, 1924, and recorded September 12, 1924. On January 7, 1925, this appellant served notice that he claimed the buildings in question and intended to remove them pursuant to the consent of the former owner of the land. Thereupon this action was prosecuted and the trial court found that the buildings were fixtures and that the defendant had no right, title, or interest in the buildings and restrained the removal thereof.

Appellant contends that the evidence is insufficient to sustain findings numbered III, IV, and VI, or either of them. So far as it is necessary to quote these findings, they were in the following language:

"III. It is true that there is now situate on said lands hereinafter described, and firmly fixed thereto, imbedded therein, and an integral part thereof, a certain one-story frame, five-room dwelling house, and a frame harvester shed approximately forty (40) feet wide by eighty (80) feet long, and said buildings were situate upon said land, affixed thereto and an integral part thereof on the said 2nd day of September, 1924, when plaintiff became the owner and possessor in fee of the land . . . , and said buildings thereon situate and affixed thereto.

"It is not true that said dwelling house and said shed, or that either of them was erected on said premises as a temporary structure."

Finding number IV determined that these buildings in question were of great value to plaintiff and necessary for the accommodation of his farm hands and machinery on said premises. Finding number VI holds that the defendant has no right, title, or interest in said buildings, or either of them, and that he has and had no right or permission to remove them from said land or to molest or interfere with plaintiff's ownership and right to the use and enjoyment of the same.

[1] Section 1013 of the Civil Code provides that: "When a person affixes his property to the land of another,

without an agreement permitting him to remove it, the thing affixed . . . , belongs to the owner of the land, unless he chooses to require the former to remove it.'' The only exception to this rule is found in section 1019 of the Civil Code, and applies only to property affixed by a tenant for trade purposes, etc. Appellant, in the instant case, was not a tenant of the owner of the land in question, and this exception does not apply. It would seem to follow from the foregoing statute, that when property is actually affixed to the land of another, the burden is upon him who seeks to remove it, to show that it was placed there with permission to remove it, for in the absence of proof of such permission, the presumption would be that it belongs to the owner of the realty.

[2] The term ''fixtures'' is defined in section 660 of the Civil Code as follows: ''A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs; or imbedded in it, as in the case of walls; or *permanently resting upon it,* as in the case of buildings, or permanently attached to what is thus permanent, as by means of cement, plaster, nails, bolts or screws.''

Even with the aid of the foregoing definition of statutory fixtures, it is still necessary to determine whether there is substantial evidence in the record of this case to warrant the finding to the effect that the buildings in question were ''permanently resting'' on the land in question, or were ''permanently attached'' to what was in fact a fixture on the land, for this is the effect of the finding that ''said buildings were situate upon said land, affixed thereto and an integral part thereof.''

In determining whether these buildings were permanent fixtures on said land, three things are to be considered: 1. Were the structures annexed to, or imbedded in the soil? 2. Are the structures adapted to the purpose for which the property upon which they are located, is intended to be used? 3. Was it the intention that these buildings should become permanent fixtures, when they were constructed? (11 R. C. L. 1059; *Breyfogle* v. *Tighe,* 58 Cal. App. 305 [208 Pac. 1008]; *City of Vallejo* v. *Burrill,* 64 Cal. App. 399, 407 [221 Pac. 676].)

In answer to the first question, it must be conceded that the buildings in question were not annexed to or imbedded

in the soil. There can scarcely be any dispute as to the second question, for both buildings were typical, appropriate buildings for just such a farm as the one upon which they were constructed; one was a machine shed and the other was a dwelling-house, the only dwelling-house on the premises. The third question presents the real issue in this case. Were these buildings intended to become permanent fixtures on the land when they were constructed?

[3] It becomes quite apparent that there can be no definition of the term "fixtures" which will embrace all conditions under all circumstances. Each case must be determined on its own particular facts. (*Gosliner* v. *Briones,* 187 Cal. 559 [204 Pac. 19].) For instance, it would be illogical to conclude that just because a structure was built on a level prairie, and placed upon mudsills without the necessity of disturbing the surface of the soil, that, therefore, it could not become a "fixture," or a permanent building. [4] The entire manner of construction; the character of the building; the value; its adaptability to the purposes for which the land is used, and the expressed intent as to whether it was, or was not to become permanent, if any were made, should all be taken into consideration. [5] It therefore naturally follows that the bare declarations of the owner of the land and the constructer of the improvements will not necessarily control. It is apparent that the facts and circumstances surrounding a particular case may completely overwhelm and refute mere declarations of interested parties. All the facts, circumstances, conditions, and declarations should be considered in determining the question of fixtures. With respect to the element of intention, it is said in 11 Ruling Case Law, at page 1062: "The test of intention is to be given a broad and comprehensive signification. It does not merely imply the secret action of the mind of the owner of the property, nor need it be expressed in words, but is to be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made; which, obviously, suggests that the other tests are really part of this comprehensive test of intention, and that they derive their chief value as

conspicuous evidence of such intention." See, also, *Brey-fogle* v. *Tighe*, 58 Cal. App. 305 [208 Pac. 1008].

In the case of *Miller* v. *Waddingham*, 91 Cal. 377 [13 L. R. A. 680, 27 Pac. 750], upon which the appellant relies, in sustaining the findings of the trial court to the effect that certain dwelling-houses built upon town lots were not fixtures, the supreme court merely said: "The finding in the present case that 'said houses were built on redwood mudsills of two-inch by six-inch timber said mudsills resting upon the soil,' and that 'the soil was not disturbed in building or removing said houses' is consistent with the determination of the court below that the buildings in question were not fixtures; and for the purpose of upholding its decision, it may be assumed that such determination was made by it. But, without determining whether or not the buildings were fixtures, we are of the opinion that upon other principles applicable to the case the plaintiff is not entitled to the relief sought." The foregoing language cannot be construed to mean that our supreme court determined as a matter of law that any building which was constructed on mudsills, without disturbing the soil upon which it was built, was therefore not a fixture. All that the court there said was that these circumstances were consistent with the trial court's finding that under all the facts of that particular case, the buildings in question were not fixtures. All of the facts of that case do not appear, but it does appear that the owner of certain lots made an agreement with a contractor that he would pay a specified sum for the houses, and that the houses should belong to the builder until they were paid for. And it further appeared that the owner failed to pay for them as he had agreed to do. Yet the supreme court specifically refrains from deciding that those houses were not fixtures. Of course, the fact that the houses were constructed on mudsills and that the soil was not disturbed in the process of building are circumstances to be considered, together with all the other facts, declarations, and conditions surrounding the affair. It cannot be said that if the trial court, in the Miller case above cited, had found that these same buildings were in fact fixtures and could not be removed, that the supreme court would have reversed the case on the sole ground that a structure on mudsills built without disturbing the

surface of the soil, was necessarily temporary in its nature and not a fixture. The foregoing comments are equally appropriate to the case of *Gosliner* v. *Briones,* 187 Cal. 559 [204 Pac. 19], upon which appellant also relies. The finding of the trial court to the effect that the buildings in question were not fixtures was based solely upon a finding that the owner of the land had consented to their removal.

[6] To hold because buildings were constructed on mudsills, that therefore they are merely temporary, would lead to an absurdity, in view of the fact that in the rural districts of California a large proportion of the more modest dwelling-houses, as well as barns, sheds, garages, and outbuildings of various classes, are in fact built upon mudsills. The very evidence in the instant case shows that many other similar buildings in that neighborhood are constructed on mudsills. [7] The mere foundation upon which a house is constructed is not conclusive in determining whether the structure is, or is not a fixture; nor is it conclusive merely because the mudsills, or timbers upon which a house is constructed, rest upon the surface of the soil without having disturbed the earth in erecting the structure. In the case of *Las Animas Land Co.* v. *Fatjo,* 9 Cal. App. 320 [99 Pac. 393], the late Mr. Justice Burnett says: "The house and barn were buildings, and . . . we must assume, what is usual and a matter of common knowledge, that they were permanently resting upon the soil."

[8] Whether consent to remove the buildings in question was in fact granted by the owner becomes a question which must be determined from all the facts and circumstances of the particular case. In the action at bar the trial court has found, in effect, that no such consent was given, for it specifically determines that the buildings in question are affixed to and an integral part of the soil; that they were not erected as temporary structures; and that the defendant has no right, title, or interest in the buildings.

[9] If there is substantial evidence in the record to support the findings, then the judgment should be affirmed. (2 Cal. Jur. 921, sec. 543.)

[10] There seems to be a number of substantial circumstances, together with reasonable inferences which the trial court had a right to consider, and which we think are ample to support the judgment. For instance, the

relationship of the interested parties was that of father and son. One might legitimately infer that the son was willing to make an investment for his own temporary benefit, with the intent of ultimately contributing the improvements to the betterment of his father's farm. Or one might infer that the son calculated that he would some day become the owner of the ranch and that his temporary investment would then inure to his own profit. Indeed this inference is supported in a measure by the fact that, in October, 1922, a year and a half after the buildings were constructed, the father did, in fact, convey the land to appellant and his brother, and did record the deed. To be sure, both the father and son testify that the appellant had no knowledge of this conveyance, and still it is a circumstance to be considered. [11] Where a son, by permission, builds a house for his own use, upon his father's land, with the expectation of eventually becoming the owner of the estate, the improvements become a part of the realty, and cannot be removed. (*Leland* v. *Gassett,* 17 Vt. 403.) The dwelling-house in question was a substantial five-room cottage, plastered and shingled, having a brick chimney and finished in a fairly good and permanent fashion at a cost of $2,000. In other words, it had the appearance of being a permanent dwelling structure. The machine shed was built on the side of, and actually attached to, a warehouse belonging to the owner of the ranch, which warehouse was a fixture on the premises. The shed was attached to the warehouse by nailing upright timbers to the wall for the adjusting of which holes were cut in the overhanging eaves of the warehouse roof. It was explained that these timbers which attached the shed in question to the warehouse were only toenailed to the outer wall, and that the nails which penetrated the wall of the warehouse were not even clinched on the inside. While this might indicate careless workmanship, it is still a circumstance to be considered. This shed was covered with corrugated iron, and the building was also placed on mudsills, one of which was imbedded four or six inches in the earth. The shed cost $1,000 or $1,200. Mr. Silva, the carpenter who built the shed, testified, in response to questions, as follows: "Q. Did you . . . nail any part of this harvester shed to the warehouse? . . . A. Just stick a few nails this way to hold it up. Q. And is it still

nailed to the wall of the warehouse? A. I believe so. Q. Now would it be possible to move this harvester shed you built without tearing it down, taking it to pieces? . . . A. Well, we have to take him all down—can't move it that way.''

At the same time that the appellant built the dwelling-house and shed he also constructed a tank-house upon a concrete foundation, and a reservoir, connecting them with the dwelling-house by a piping system so as to supply the cottage with water for domestic purposes. Appellant admits that he did not expect to remove this tank-house or water apparatus, but explained that his father told him that if he would build it in a substantial manner, he would pay him for it. Yet it was not paid for by the father.

It is true that both the father and the son testified that the buildings in question were constructed with the father's permission to remove them at will. This evidence is not corroborated except in a very indefinite manner by the carpenter, Putnam, who, in response to a question as to what instructions Floyd Blakeley gave him regarding the foundation, said: ''Well, when I was making the bill for the lumber, as I remember, he suggested using 6 by 8's or 8 by 8's, redwood, so if he wanted to move it— He didn't say he intended to move it, ·but he said, if he did want to move it he could hook his tractor . . . on there and move it.''

Another circumstance occurred at the trial which was in the nature of impeaching testimony. The appellant had testified positively that his father had consented to his removing the buildings. On cross-examination, in response to a question as to whether, at the previous hearing on motion for a temporary restraining order, he had not said he did not recall what his father had said, it appears that he in fact then testified: ''I asked him if I could put up the harvester shed, and he said 'yes,' and I asked him where, and he said over at the end of the workhouse was all right. Q. Was there anything said about whether the buildings were to remain there, or all become removable? A. Not that I recall in the conversation with him.'' In explanation of this inconsistency in his testimony, the appellant said that his memory had been refreshed since the former hearing.

The appellant admitted that he had never made any claim to either the trustee or the beneficiary under the trust deed to the effect that he was the owner of these buildings. The first claim which he ever made to anyone was by means of the notice which he served January 7, 1925, some five months after the property had been actually sold on foreclosure of the trust deed.

It is also a circumstance that in a number of conversations with the holders of the mortgage deed about the prospective foreclosure, the father never mentioned his alleged consent that his son might remove the buildings. On cross-examination, the following occurred: "Q. Did you have a conversation with any of the officers of the Mortgage Guarantee Company . . . just before the deed was foreclosed? A. Oh, yes, I had several talks with them. I went down there and tried all kinds of deals. Q. At that time, and before the trust deed was foreclosed, did you have any conversation about the buildings that had been put up by Floyd? A. Well, I was pleading with them for more time to give me a chance to get a real loan, told them that the boys had put up buildings on there on the property, that *I didn't want to lose it* if I could help it."

In view of the foregoing conclusion that the findings of the trial court are amply supported by the evidence, it becomes unnecessary to pass upon the question raised by respondent, as to whether under a trust deed which specifically mortgages the property described, together with the appurtenances, and "all buildings and improvements thereon, or that may be placed thereon," a trustor, without the consent of the trustee or the beneficiary, may consent to a licensee removing from the mortgaged premises improvements constructed by him, which, except for such permission, would become fixtures.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.