BANK OF VALLEY, A CORPORATION, APPELLANT, V. THE UNITED STATES NATIONAL BANK OF OMAHA, A CORPORATION, ET AL., APPELLEES.

341 N.W.2d 592

Filed December 16, 1983. No. 82-730.

Robert P. Miller, for appellant.

Robert G. Decker, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This is an appeal in a declaratory judgment action brought to determine the priority of liens between the plaintiff Bank of Valley's security agreement

and the defendant The United States National Bank of Omaha's security agreement. The property involved was a residence built on leased land.

The evidence is not in dispute. On July 26, 1973, Robert Luethge entered into a lease agreement with Ginger Cove, Inc., for Lot 66, in Ginger Cove. The lease provided: "11. REMOVAL OF LEASEHOLD IMPROVEMENTS. Lessee has the privilege to remove all improvements made by Lessee on said premises provided the same are removed before sixty (60) days after the expiration of this lease, time being of the essence and a material consideration in the regard. If not removed within such sixty (60) days, Lessee shall forfeit all property then remaining on the premises."

Luethge subsequently erected a five-bedroom frame home on Lot 66, Ginger Cove. On February 28, 1978, Robert and Shirley Luethge executed a financing statement granting Bank of Valley a security interest in the frame house "situated on lot 66 Ginger Cove Valley, Ne.," to secure advances made by the bank to the Luethges. The financing statement was filed on March 3, 1978, in the office of the Douglas County clerk. At the time of trial the unpaid balance owed by the Luethges amounted to $30,500, plus accrued interest.

The Luethges subsequently sold the home to Nafus, Nafus sold to Smith, and on February 19, 1981, Smith sold the home to the defendants Edward and Sarah Zachary. Each time the house was sold, the sellers assigned their leasehold interest in Lot 66 to the purchasers.

On February 18, 1981, the Zacharys executed a financing statement granting United States National Bank a security interest in the house on Lot 66, which was filed in the office of the Douglas County register of deeds on February 19, 1981. A copy of the financing statement was also filed in the office of the Douglas County clerk.

The Bank of Valley brought the present action to

determine the priority of the liens of the parties in the frame house. Both parties moved for summary judgment. At the hearing on the motions documentary evidence was received and considered by the court. The trial court found that no material issue of fact existed, that the Bank of Valley had filed its financing statement improperly, and that the lien of the United States National Bank was prior. The Bank of Valley appeals.

The trial court determined that the house should be deemed a fixture. The proper place for filing a statement granting a security interest in a fixture in 1978 was in the office of the register of deeds. Neb. U.C.C. § 9-401(1)(b) (Supp. 1977) provided: "When the collateral is goods which at the time the security interest attaches are or are to become fixtures, then in the office of the register of deeds . . . ."

The Bank of Valley argues that a house located on leased property is personal property if the lease provides for the removal of improvements. The proper place for filing a financing statement granting an interest in personal property is in the office of the county clerk. Section 9-401(1)(c) (Supp. 1977) provided in part: "When the collateral is any other type of tangible or intangible personal property, the following rules apply: When the debtor is a resident of this state, then in the office of the county clerk in the county of the debtor's residence."

Prior to 1980, the Nebraska statute did not contain a definition of the term "fixtures." The question as to when chattels become realty by affixation was to be determined by the general law of the jurisdiction. See Neb. U.C.C. § 9-313 (Reissue 1971), and comment 2 thereto.

"[T]here can be no definition of the term 'fixtures' which will embrace all conditions under all circumstances. Each case must be determined on its own particular facts." *Bond Investment Co. v. Blakeley,* 83 Cal. App. 696, 701, 257 P. 189, 191 (1927).

In determining whether a thing has become a fix-

ture, the following factors are considered: " ' " '1st. Actual annexation to the realty, or something appurtenant thereto. 2d. Appropriation to the use or purpose of that part of the realty with which it is connected. 3d. The intention of the party making the annexation to make the article a permanent accession to the freehold. This intention being inferred from the nature of the articles affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made.' [Citation omitted.] The third test, namely that of 'intention,' appears by the clear weight of modern authority to be the controlling consideration." ' [Citation omitted.]" *T-V Transmission v. County Bd. of Equal.*, ante p. 363, 366, 338 N.W.2d 752, 754 (1983). " 'Of these three tests, the clear tendency of modern authority seems to be to give pre-eminence to the question of intention to make the article a permanent accession to the freehold, and the others (the first and second statements) seem to derive their chief value as evidence of such intention.' " *Bemis v. First National Bank*, 63 Ark. 625, 629, 40 S.W. 127, 128 (1897).

The intention of the parties may be made manifest by an agreement between the parties. "Even 'fixtures' are not real estate when understood by the parties involved to be personal property." *Gilman v. Northern States Power Co.*, 242 Wis. 130, 136, 7 N.W.2d 606, 609 (1943).

" 'Ordinarily a building placed upon land is a fixture, becomes part of the real estate and passes with it; but the buildings may be personal property under some circumstances. Parties are at liberty to make any agreement or arrangement with regard to their property, to dwelling houses or any other property that they see fit, and if the agreement is such a one as will make the property personal property, as between those parties it is personal property, and may be so treated.'

". . . 'The parties concerned may, by agreement in due form, give to fixtures the legal character of realty or personalty at their option, and the law will respect and enforce their understandings . . . .' " *Nathan Myrick v. Rose A. Bill, et al.*, 3 Dakota 284, 287-88, 17 N.W. 268, 269 (1883).

This court stated in *Freeman v. Lynch*, 8 Neb. 192, 199 (1879): "Parties by contract may make such arrangements as to the removal of fixtures as they see fit. In its correct sense, the term 'fixtures' includes such things only of a personal character as have been annexed to the realty, and which may be afterwards severed or removed by the party who united them, or his personal representatives, against the will of the owner of the freehold. Broom's Legal Maxims, 419, and cases cited. The term is often used, however, to designate those articles which are not by law removable when once attached to the freehold, as well as those which are severable therefrom. It is well settled by the clear weight of authority in this country, that houses or other structures of a permanent character erected on the land of another, under an agreement, express or implied, that they are to remain the personal property of the builder, do not attach to and become annexed to the realty." See, also, *Waters v. Reuber*, 16 Neb. 99, 19 N.W. 687 (1884).

In *Garrison General Tire Service, Inc. v. Montgomery*, 75 N.M. 321, 404 P.2d 143 (1965), a lessee built a cabin upon the leased realty. In determining that the cabin was the personal property of the lessee, the court stated at 325, 404 P.2d at 146: "The undisputed evidence is that the owner-lessor of the land and the defendant, the original lessee thereof, recognized the cabin in question as the personal property of the lessee and intended it to so remain, expressly providing in the lease for its removal upon the expiration or termination thereof. It is also undisputed that this had been the established practice of the community and of the owner-lessor for many

years. Where the lessor and lessee expressly so agree, structures placed on leased premises by a lessee remain the personal property of the lessee." See, also, *Hughes v. Kershow*, 42 Colo. 210, 93 P. 1116 (1908), in which it was held that a building built on leased premises remained the personal property of the lessee during the lease term as the lease provided that the building may be removed during the last 60 days of the lease.

In the present case the lease between Luethge and Ginger Cove, Inc., provided for the removal of any improvements. The parties thus intended that the house remain the personal property of the lessee. As such, the financing statement, granting a security interest in the house, was properly filed in the office of the clerk of the county of the debtor's residence. § 9-401(1)(c) (Supp. 1977). This having been done, the interest of the Bank of Valley was properly perfected and is prior to that of United States National Bank. See Neb. U.C.C. §§ 9-303, 9-312 (Reissue 1971).

The judgment of the District Court is reversed and the cause remanded with directions to enter judgment in favor of the plaintiff in conformity with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.