**In the Matter of Harold D. SCHULZ, Debtor.**

**Bankruptcy No. BK85–980.**

United States Bankruptcy Court, D. Nebraska.

Feb. 26, 1986.

Thomas Ashby and Richard E. Putnam of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., for First Beemer Leasing Corp.

C.G. Wallace, III of Thompson, Crounse, Pieper & Quinn, Omaha, Neb., for debtor.

## MEMORANDUM OPINION RE FIRST BEEMER LEASING CORPORATION APPLICATION FOR PAYMENT AND ALLOWANCE OF ADMINISTRATIVE RENT AND MOTION FOR RELIEF FROM AUTOMATIC STAY

TIMOTHY J. MAHONEY, Bankruptcy Judge.

The application of First Beemer Leasing Corporation for payment and allowance of administrative rent and the motion for relief from automatic stay filed by First Beemer Leasing Corporation were consolidated by agreement of the parties and submitted on affidavits and briefs. Appearing on behalf of First Beemer Leasing Corporation was Thomas Ashby with Richard E. Putnam, both of Baird, Holm, McEa-

chen, Pedersen, Hamann & Strasheim of Omaha, Nebraska. Appearing on behalf of the debtor was C.G. Wallace, III, of Thompson, Crounse, Pieper & Quinn of Omaha, Nebraska.

### Findings of Fact

The history of the dispute between the parties is helpful to an understanding of the issues. The debtor, a farmer, filed a petition for relief under Chapter 11 on May 1, 1985. His Schedule A–2—Creditors Holding Security listed First Beemer Leasing Corp. as having security interest in "Two Valley Irrigation Systems, Wells, Pumps, and Motors" with a market value of $25,000 and with an amount due the creditor of $52,000. The debtor also filed a statement of executory contracts on which he listed "Irrigation equipment lease with First Leasing Corp., Beemer, NE, (First Beemer Leasing Corp.)."

On May 22, 1985, the debtor filed a motion for authority to assume the lease with First Beemer Leasing Corp. covering two Valley irrigation systems, wells, pumps and motors. The debtor alleged in the motion that he had an undivided one-half interest in the lease and that his spouse who was not involved in a bankruptcy proceeding also had an undivided one-half interest in the lease and that she was willing and able to assume her share of the obligation.

Hearing was held on the motion for authority to assume the interest in the lease on July 22, 1985. Debtor appeared by counsel and withdrew the motion.

On August 30, 1985, First Beemer Leasing Corp., hereafter referred to as "Creditor", filed a motion to compel the assumption or rejection of the lease.

On September 26, 1985, the Creditor filed an application for payment and allowance of administrative rent. The Creditor alleged that the debtor was obligated under the lease to make lease payments and pay taxes and that between May 1, 1985, and the date the application was filed $6,497.67 was due and unpaid pursuant to the terms of the lease. The Creditor requested an order directing payment of that amount

plus the monthly accruing amounts pursuant to the terms of the lease.

At a hearing on October 4, 1985, with both Creditor and Debtor appearing by counsel, Debtor was granted 45 days to assume or reject the lease in question.

On November 22, 1985, an order was entered setting a briefing and progression schedule with regard to the application for payment and allowance of administrative rent.

Also, on November 22, 1985, Creditor filed a motion for relief from the automatic stay alleging that the Debtor had failed to comply with the order of October 4, 1985, in that it had not assumed the lease and cured the default nor had it specifically rejected the lease. The motion for relief alleged that since the debtor had taken no action concerning the lease, it should be deemed rejected and that it was, therefore, not necessary for an effective reorganization; that the Debtor had no equity in the lease or in the equipment subject to the lease; that the Creditor was not adequately protected since the Debtor had used the equipment, apparently would continue to use it in the 1986 crop year and had made no payments to the Creditor.

At the hearing on the motion for relief from automatic stay which was held on December 19, 1985, the parties agreed that the Court could consolidate for decision the issues raised in the motion for relief and the issues raised in the application for payment of administrative rent and use the previously submitted affidavits and briefs in making the decision.

Creditor also, at the hearing on December 19, waived the statutory time requirements for decision regarding a motion for relief from stay.

The issues are as follows:

1. Is the "lease" a true lease or a financing instrument such as a disguised sale of personal property with the seller attempting to take a security interest in the irrigation equipment?

2. If the "lease" is a disguised security instrument, did the bank comply with the requirements to perfect its security interest?

3. If the "lease" is a true lease, should the bank be allowed administrative rent and should the Debtor be required to pay the administrative rent?

4. If the "lease" is a true lease, has it been rejected and/or should relief be granted to the Creditor?

The documents in question consist of one which is entitled a "lease agreement", one which is entitled a "lease supplement" which lists a 4 tower center pivot with Nelson end gun and one which is entitled "lease supplement" which lists a 40 H.P. Motor, a Western Land roller pump with attachments and a 50 H.P. Motor and Western Land roller pump with attachments. All three documents are dated July 7, 1982, and are signed by Harold D. Schulz, lessee.

The documents do not give Harold Schulz the right to purchase the property at the end of the lease term. The documents state that the equipment shall at all times be and remain personal property notwithstanding that any such equipment may be affixed to realty. The documents require that the lessee display notice of lessor's ownership of the equipment at all times by identifying the equipment with a stencil or plate or some other indication of ownership. The documents require that if the equipment is placed upon property in which another party claims an ownership interest, the lessee is to obtain the appropriate acknowledgment from those parties claiming ownership of the land with such acknowledgment specifically identifying the equipment as personal property.

The document at paragraph 7 of the "lease agreement" limits the number of hours per month that the equipment can be used, provides that lessor may inspect the equipment and that the lessee must notify the lessor of any change in location of the equipment, any encumbrances on the equipment and any accident resulting from the use or operation of the equipment.

Paragraph number 9 of the "lease agreement" provides that the lessor may file or record the lease or a financing statement with respect to the lease.

Paragraph number 19 of the "lease agreement" requires that the equipment be returned at the end of the lease term.

Paragraph number 24 of the "lease agreement" provides that the lease and the supplements are the entire agreement between the parties and that the agreement cannot be modified except in writing.

The equipment which is the subject of the "lease agreement" and the supplements is a center pivot irrigation system. The system includes a well hole lined with column pipe into which is placed the shaft with a bowl assembly attached, head assembly and discharge base, motor and sprinkler system.

### Conclusions of Law

### I

### The Agreement

■ The agreement between the parties is a true lease. The question of whether a lease is a true lease, rather than one intended as security, is answered by the intent of the parties. Nebraska U.C.C. § 1-207. *American Standard Credit v. National Cement Co.*, 643 F.2d 248, 266 (5th Cir.1981). The intent of the parties in this case is shown by the language of the document itself and by the actions of the parties.

Several courts have stated that the characterization of the transaction by the parties is evidence of the intent of the parties. *American Standard Credit, supra*, 643 F.2d at 266. *Gibreal Auto Sales, Inc., v. Missouri Valley Machinery Co.*, 186 Neb. 763, 186 N.W.2d 719, 721 (1971).

The documents in this case do not give the "lessee" the right to purchase the equipment at the end of the lease term. The absence of an option to purchase is evidence of the parties' intent that the agreement is a true lease. See *In re Elliott*, 18 B.R. 602, 33 U.C.C. Rep.Serv. 1486, 1488 (Bankr.D.Neb.1982). In *Elliott*

Judge Crawford analyzed Nebraska U.C.C. § 1-201(37). That section has been interpreted to mean a lease is not intended as a security interest unless (1) the lessee is obligated to make rental payments roughly equivalent to the cost of the equipment less interest and (2) the equipment lacks residual value at the termination of the lease, thereby permitting transfer of title for a nominal amount. *Williston on Sales*, Section 6-8, cited *In re Loop Hospital Partnership*, 35 B.R. 929, 953 (Bankr.N.D.Ill. 1983).

In addition to the lack of a purchase option, the evidence before the Court is that at the end of the lease term, there will be approximately 15 years of useful life left in the equipment. Debtor is required by the lease to return the equipment to the lessor. The residual life of equipment is a significant factor in establishing the transaction as a lease. *In re Marhoefer Packing Co.*, 33 U.C.C.Rep.Serv. 370, 380-81, 674 F.2d 1139, 1145 (7th Cir.1982).

The debtor admits that the agreement provides that the property will remain in the ownership of the creditor, that there is no purchase option, that the debtor is required to return the property at the end of the lease term. However, the debtor claims that the documents also contain a number of other terms which prove the real intent of the parties to be a purchase-security agreement. Those factors are:

a. the lessee is required to insure the equipment;

b. risk of loss is on the lessee;

c. the lessee is required to pay for taxes, repairs and maintenance;

d. upon default the obligation is accelerated;

e. the goods are selected from a third party by the lessee;

f. the warranties generally found in a lease are excluded by the agreement.

These same factors were considered in the case of *In re Loop Hospital Partnership*, 35 B.R. 929, (Bankr.N.D.Ill.1983). In that case the creditor had retained title to the equipment in question and disclaimed all warranties. The debtor was obligated to repair the equipment, pay for its insur-

ance, indemnify the creditor with respect to any liability created by use of the equipment or third party's interaction with the equipment, and return the equipment to the creditor at the end of the agreed term. The Court noted that some courts have mentioned a creditor's status as a financier, lease provisions with respect to taxes and repairs, default and acceleration, and exclusion of warranties and debtor's selection of the leased property from a third party to be factors in characterizing a transaction. The Court found that those factors were basically irrelevant and neither conclusive nor primary because they can also appear in true leases.

The parties treated the agreement as a true lease until very recently. The debtor listed the agreement as a lease in the schedules filed with this Court. The debtor filed a motion requesting the right to assume the lease. After withdrawal of the motion, the debtor appeared at a hearing on motion by the creditor requesting that the debtor be required to assume or reject the lease within a certain amount of time. Without objection, the debtor was granted 45 days to assume or reject the lease. The debtor did not act within 45 days.

The most significant terms of the document lead this Court to believe that the intent of the parties was the execution of a true lease. There is no purchase option. The equipment is to be marked as owned by the lessor. The equipment is to be returned at the end of the lease term. The residual value of the equipment and the expected useful life are both in excess of the payments under the lease and the term of the lease. The equipment is removable. The lessee is required to tell the lessor if the equipment is moved from its original location or if it is damaged in any way.

Once again, this Court concludes that the agreement between the parties is a true lease.

## II

### The Equipment

■ The equipment is not a fixture. The agreement provides that the property shall remain personal property even if it is af-

fixed to the land. The evidence is that the equipment, including the piping and motors, could be removed for a nominal cost. Once again, the intent of the parties needs to be determined and it is shown by the nature of the equipment, the manner of affixing the equipment to the realty and the use for which the annexation of the equipment to the realty has been made. *Bank of Valley v. U.P.S. Nat'l. Bank of Omaha,* 215 Neb. 912, 341 N.W.2d 592 (1983). Intention of the parties appears by the clear weight of modern authority to be the controlling consideration. *Bank of Valley, supra,* 215 Neb. at 915, 314 N.W.2d at 595.

Similar to the situation in *Bank of Valley,* the lease agreement in this case specifically provides that the equipment shall remain personal property even if affixed to realty.

If this Court is to "respect and enforce" the understanding of the parties to this action as *Bank of Valley* requires, it must find the irrigation to be "personal property" as agreed upon in the lease agreement. See unpublished memorandum opinion in *In re Mahloch Farms, Inc.,* United States District Court for the District of Nebraska, CV83–0–838, filed October 11, 1984.

## III

### Administrative Expenses

The creditor has requested payment and allowance of administrative rent. It has presented evidence that the reasonable administrative rent should be based upon the $12,762.44 yearly payment called for in the lease agreement and supplements; Nebraska use tax contributions debtor is obliged to pay pursuant to the lease but which the creditor has paid for the post-petition period to prevent a state revenue department levy against the leased property; and interest on delinquent rent, which is part of the reasonable terms of the lease and an obligation of the debtor pursuant to the lease agreement.

■ Bankruptcy Code § 503 permits the Court to allow rent as an administrative expense. The amount of the administrative expense to which the lessor is entitled

is reasonable rent and rent related contributions, taxes and charges for the right to use the leased property for the relevant time period, sometimes called "use value" of the property. The property's use value is presumed to be the payments called for by the lease, as amortized. *Green v. Finnigan Realty Co.*, 70 F.2d 465, 467, (5th Cir.1934); *In re GHR Energy Corp.*, 41 B.R. 668 at 672, 673 (Bankr.D.Mass.1984).

This Court has found no authority for the payment of interest on delinquent rent as an administrative expense and, therefore, shall not allow such payment. The amount requested by the lessor is reasonable under the circumstances. Lessor requests $6,404.54 for the period from May 1, 1985, through October 25, 1985. This amount is granted. Further, the lessor requests allowance of rents and charges accruing from October 25, 1985, until the lessee gives up possession of the equipment.

Determination that future rents and charges will be administrative expenses is appropriate. *Matter of Midtown Skating Corp.*, 3 B.R. 194 (Bankr.S.D.N.Y.1980). However, without evidence of actual use of the equipment from October 25, 1985, into the future, no determination will be made as to the amount of the administrative expense which shall be allowed.

## IV

### Relief from Stay

By court order the debtor was to assume or reject the lease several months ago. The date for such assumption or rejection passed without action by the debtor-in-possession. The Court could conclude that the lease is, therefore, rejected. The lease having been rejected, it is apparent that the equipment is not necessary for the effective reorganization and that the debtor has no equity in the equipment. Further, the debtor has not adequately protected the interest of the creditor. Relief from the automatic stay is appropriate.

However, this Court is aware that the debtor may have failed to assume or reject the lease because it believed there was a valid dispute with regard to the characterization of the agreement as a lease or disguised security agreement. If the debtor chose to remain consistent in its position that the agreement was not a lease, and, therefore, did not take action to assume or reject, it should not now be punished because the Court finds the transaction to be a true lease. Therefore, debtor-in-possession is granted 30 days additional time to assume or reject the lease and to cure the default if it desires to assume the obligations of the lease. If the debtor does not take affirmative action to assume the lease obligations within that time period, the lease shall be deemed rejected. Upon rejection, relief is granted to the creditor.

The administrative expense allowed above is not payable until the lease is rejected. The reason for this is that if the lease is assumed, all of the obligations under the lease, including any default interest provisions must be paid in order to cure the default. This amount will include the administrative expenses allowed. However if the lease is rejected, the debtor-in-possession is ordered to pay the administrative expenses within 10 days of such rejection.

Separate journal entry shall be filed.