### In the Matter of THAYN FARMS, INC., Debtor.

### Bankruptcy No. BK85–107.

United States Bankruptcy Court, D. Nebraska.

July 12, 1988.

---

Michael Heavey, Dwyer, Pohren, Wood, Heavey & Grimm, Omaha, Neb. for debtor.

Patrick Nelson, Jacobsen, Orr, Nelson & Wright, P.C., Kearney, Neb., AgriStor Leasing.

## MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Trial was held on May 3, 1988, concerning the claim for administrative expenses filed by AgriStor Leasing. Appearing on behalf of the debtor was Michael Heavey of Dwyer, Pohren, Wood, Heavey & Grimm, Omaha, Nebraska, and appearing on behalf of AgriStor Leasing was Patrick Nelson of Jacobsen, Orr, Nelson & Wright,

P.C., Kearney, Nebraska. This Memorandum is the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

### Facts

Prior to bankruptcy, the debtor (Thayn Farms) and the leasing company (AgriStor) entered into three separate lease agreements for personal property. During the pendency of this Chapter 11 case, the debtor retained possession of the property. The voluntary petition in this Chapter 11 case was filed on January 18, 1985, and, as of this date, there has not been a Chapter 11 plan confirmed.

During the pendency of the Chapter 11 case, the leases have each expired by their own terms on different dates. As to each of the leases, AgriStor has filed separate motions seeking both an order requiring the debtor to assume or reject the leases under the Bankruptcy Code Section 365(d)(2) and an order allowing AgriStor an administrative expense claim under Sections 364 and 503, for the use and possession of the leased property. In addition, AgriStor requests that if the Court finds the leases are not assumable, that the Court grant relief from the automatic stay and permit AgriStor to obtain possession of the property.

At trial, the parties stipulated that the debtor would not assume any of the leases and agreed that the Court should enter an order granting relief from the automatic stay and permitting AgriStor to enter upon the premises and remove the equipment. The Court granted such relief from the bench.

The leases are true leases and not disguised security agreements or security instruments. Based upon the fact that the leases are true leases, the leases were unexpired on the petition filing date and the debtor has retained possession during the pendency of this case, AgriStor believes it is entitled to an administrative expense for the reasonable rent for the use of the equipment from and after the petition filing date up to and including the date on which the debtor effectively assumes or rejects the leases or the Court grants relief from the automatic stay.

The debtor, on the other hand, suggests that because at least two of the leases were in default status prior to the filing of the bankruptcy petition, they have somehow terminated prior to bankruptcy and, as a result, the debtor, during the pendency of the case, had neither the power nor the right to assume or reject the leases and AgriStor is not entitled to the allowance of an administrative expense.

AgriStor filed proofs of claim for each of the leases. The amount claimed due on each lease is the sum of the payments which were in default on the petition date plus the remaining balance of the payments due from petition date through the expiration of the lease.

The leases each have a default provision and a remedy provision in separate paragraphs. In Lease No. 1 and Lease No. 2, (Exhibit 1 and Exhibit 2), the default paragraph is at numbered paragraph 14 and the remedy paragraph is at numbered paragraph 15. In Exhibit No. 3, which has been considered by the parties as Lease No. 3, the default paragraph is number 16 and the remedy paragraph is number 17.

The default language in Lease No. 1 and 2 provides that if there is a default in the payment of any rent within ten days after it should become due, the lessor has the right to exercise any one or more of the remedies listed. The remedy paragraph provides that upon the occurrence of a default or at any time thereafter, the lessor, at its option, may declare the lease in default and, at its option, may proceed by court action to enforce performance or, by notice in writing, may terminate the lease.

Although the default and remedy language in Lease No. 3 is slightly different, it still provides that upon an occurrence of default, the lessor has the option to declare the default and to pursue various remedies, including termination of the lease.

The payments due on an annual basis on Lease 1 and 2 were not timely made prior to the bankruptcy petition being filed. The lessor has not, either prior to bankruptcy

or after the bankruptcy petition was filed, declared a default or pursued its remedies, including its right to terminate the leases. The third lease was not in default on the petition date because the 1984 payment had been made on a timely basis, the petition was filed in January of 1985 and the 1985 payment was not due until after the petition date.

The Court concludes as a fact that the leases had not been terminated and were still assumable as of the date of the petition. However, during the pendency of the case, each of the leases expired by its own terms. Lease No. 1 expired by its own terms on October 15, 1987. Lease No. 2 expired on its own terms November 1, 1987. Lease No. 3 expired on its own terms March 7, 1988.

The debtor has made very little use of the equipment since the petition date. On the petition date the equipment, which consists of a grain storage system, a slurry tank which is a manure storage system, and associated automated equipment were all in use. That is, they contained a certain quantity of the material which they were designed to store. However, this equipment is used in an active hog operation. From shortly after the petition date to sometime in 1987, the debtor was not in the hog business and did not make significant use of the equipment. In 1987 the debtor fed some hogs on a custom feeding basis and did use the equipment. On the day of the hearing in May of 1988, the equipment was being used by the debtor.

At the hearing, an officer of the debtor testified that the farm operation could continue quite satisfactorily without the equipment and, for a small price, the debtor could build the appropriate lagoon system to take care of the manure and the debtor owned other storage facilities which would take the place of the grain storage equipment.

Testimony was received on behalf of the debtor from an expert witness that, based upon the use of the equipment during the pendency of the case, the net benefit to the estate for the use of slurry and other automated equipment was $3,876 and the net benefit to the estate for the use of the grain storage equipment was $1,100. On the other hand, the witness for AgriStor testified that, based upon the leasing experiences of AgriStor since the petition filing date, the fair rental value of the equipment on a used equipment basis was $10,195.20 per year. Therefore, under her analysis, during the forty months from the date of the petition that the debtor retained the use of the equipment, the fair rental value would be $33,984.

The amount of the claim of AgriStor is $75,701.52 based upon the annual rental payments due under the leases.

*Conclusions of Law and Discussion*

The appropriate amount of administrative expense claimed to be allowed to AgriStor depends upon the resolution of a legal issue. Should the calculation be based upon only the actual benefit to the estate as determined by the debtor or should it be calculated by using the payments due under the terms of the lease or finally, should it be calculated by the use of a "fair rental value"?

■ Section 365 of the Bankruptcy Code (11 U.S.C. § 365) provides that the debtor in possession, acting with the powers of trustee, and subject to the Court approval, may assume or reject an unexpired lease of the debtor. Section 365(a). In a case under Chapter 11, the rejection of such an unexpired lease of personal property constitutes a breach of such lease immediately before the date of the filing of the petition. Section 365(g)(1).

■ Therefore, Section 365 provides that the rejection of an unexpired lease of personal property gives the lessor a prepetition claim for breach of contract. However, if the lessee continues in possession of the property without assuming or rejecting the lease prior to confirmation of a plan, the lessor, may, by motion, request the Court to order the debtor to assume or reject by a certain date. The lessor will then know whether it will have an operating lease into the future or an unsecured prepetition claim and a claim for adminis-

trative expenses under Section 503 of the Code.

■ If the debtor remains in possession of the property pursuant to an unexpired lease without assuming or rejecting the lease, the lessor is entitled to an administrative expense claim under Section 503 in an amount allowed by the Court for the actual, necessary costs and expenses for preserving the estate. Section 503(b)(1)(A).

■ The debtor has argued here and has presented case law to the effect that it should be permitted to retain possession of leased personal property and be required to pay as an administrative expense for such use only in an amount equal to the actual net dollars that the use of the property actually benefited the estate. However, to use this type of calculation, the Court would be required to review, after the fact, not only the use to which the debtor put the property, including the number of hours, days or months that the property was used, but review the management practices, the overhead expenses, the weather conditions and determine some proportionate share of all of these factors as related to the individual pieces of equipment. This seems like a strange way to determine the allowability of administrative expenses. For example, if the debtors, rather than using the equipment for a few months in a profitable operation such as raising hogs, had chosen to use the equipment for storage of materials other than which the equipment was designed and, therefore, no cash benefit accrued to the estate from such use, according to the debtor the lessor should receive no payment as an allowed administrative expense. On the other hand, if the equipment were such that the total profit of the operation came from its use and that profit far exceeded either a fair rental value or the lease payments due under the lease documents, the allowed administrative expense would, according to the debtor's theory, far exceed any claim the lessor could make had the lease been assumed.

Therefore, since such calculation would require the Court to engage in speculation as to whether or not the use by the debtor was appropriate or profitable, this Court rejects the suggestion that the administrative expense claim should be allowed only to the extent the use profited the estate.

Such rejection is supported by *In re Fred Sanders Company*, 22 B.R. 902 (Bkrtcy.E.D.Mich.1982) which held that the lessor's claim should be determined by calculating the reasonable value of the property regardless of the purpose for which it was used by the debtor. Otherwise, every lessor would be required to seek assumption or rejection early in the case.

■ This Court has previously ruled in the case of *In re Schulz*, 63 B.R. 163 (Bkrtcy.D.Neb.1986) that the Bankruptcy Code at Section 503 permits an administrative expense to be allowed to a lessor in an amount equivalent to rent and rent related contributions, such as taxes and charges for the right to use the leased property for the relevant time period. This Court, citing various authorities, determined that the appropriate standard for allowance of the administrative expense claim was the "use value" of the property. If no other contrary evidence is presented, the property's use value is presumed to be the payment called for by the lease, as amortized.

■ However, in this case, evidence has been presented that the "use value" or "fair rental value" is far less than the payments called for by the lease.

■ The fair rental value of the equipment is $10,195.20 per year. Debtor suggests that such monthly payment should be limited to those months in which the lease actually existed and did not expire by its own terms. However, if the debtor wanted to limit an administrative expense claim for the use of the property to only those months in which there was a lease in existence, the debtor could have notified the lessor to pick up the property at the termination of the lease. The lessor, without obtaining relief from the automatic stay, was prohibited from attempting to pick up the property at the expiration of the lease term. In addition, the administrative expense claim is not allowed on the basis of the existence of the lease, but on the fair

rental value of the equipment during the possession by the debtor post petition. Therefore, the fair rental value for the equipment during the time it was in the possession of the debtor from the date of the petition up to the date of trial, approximately forty months, is $33,984.

AgriStor is allowed an administrative expense in the amount of $33,984. In addition, if AgriStor was unable to pick up the equipment after the date of the trial because of debtor's use of it, AgriStor is allowed an administrative expense on the same basis as determined herein, for the actual number of days that AgriStor was prohibited from dismantling and removing the equipment.

Separate journal entry shall be filed.