18 B.R. 602 (1982)
In the Matter of Sherry Willetta ELLIOTT a/k/a Sherry Willetta Fields, Debtor.
Sherry Willetta ELLIOTT a/k/a Sherry Willetta Fields, Plaintiff,
v.
C.A.R.I.T.V. & APPLIANCE RENTALS AND SALES, Defendant.
Bankruptcy No. BK80-1957, Adv. No. 80-530.
United States Bankruptcy Court, D. Nebraska.
March 24, 1982.
*603 Gary L. Fischer, Omaha, Neb., for debtor/plaintiff.
Peter L. Miller, Omaha, Neb., for defendant.

MEMORANDUM AND ORDER
DAVID L. CRAWFORD, District Judge.
The issue before the Court is whether a "Rental Agreement" containing an option to purchase is a true lease or a security agreement. This action arises out of two purported rental agreements entered into December 21, 1979, between Plaintiff-Debtor, Sherry Willetta Elliott, and C.A.R.I.T.V. and Appliance Rental and Sales (CARI). The rental agreements cover two pieces of stereo equipment and provide that the agreements continue ". . . for successive . . . weekly or monthly terms so long as weekly or monthly rental payments are made on or before the due date." The documents further provide that ". . . in the event renter at his sole election chooses to rent this property at the rental rates set forth . . . for 74 successive weekly terms or 17 successive monthly terms, owner will transfer the property to renter."
The Debtor asserts that as a matter of law, a security interest was created by the two agreements and duly listed CARI in her voluntary petition for relief as a secured creditor to be included in the plan; CARI was to retain its lien. CARI argues that no such security interest in fact existed because there was no obligation to pay a definite purchase price. Although CARI admits to having received notice, CARI neither appeared at the first meeting of creditors nor objected to confirmation of the plan.
The Bankruptcy Code defines "security agreement" as an agreement that creates or provides for a security interest. 11 U.S.C. § 101(36). The legislative history of that section indicates that
Whether a consignment or a lease constitutes a security interest under the Bankruptcy Code will depend on whether it constitutes a security interest under applicable State or local law. H.Rep. No. 95-595, 95th Cong., 1st Sess. (1977) 314, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6271.
In Nebraska, section 201 of the R.R.S. Nebraska, Uniform Commercial Code governs this situation and provides that the facts of each case will determine whether such a lease is intended as security. However,
(a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and
(b) an agreement that upon compliance with the terms of the lease the leasee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.
R.R.S. Neb. U.C.C. § 1-201(37)
The defendant asserts that the inclusion in the instrument of a § 201(37)(b) provision does not as a matter of law make the agreement a security transaction, citing Commercial Credit Equipment Corporation v. Colley, Mo.App., 542 S.W.2d 329 (1976). That case indicates that if the transferee is *604 bound to pay the purchase price, the document will be a conditional sale. If on the other hand, the transferee is free to return the property in lieu of making payment, the instrument is a lease. CARI, then, would require an unconditional obligation to pay the full purchase price in order to find a security agreement. If the obligation is binding, there is a sale. While I would agree that an option-to-purchase provision does not of necessity create a security transaction, I cannot impose an unconditional obligation criteria to the Nebraska Uniform Commercial Code section.
This court has previously considered section 1-201(37) in Amarillo Equipment Leasing and Sales Corporation v. American Beef Packers, Inc., unreported, American Beef Packers, Inc., Bankruptcy No. BK75-0-17 (July 2, 1975) in which it was stated,
The intent to which U.C.C. § 1-201(37) refers is of the objective and not the subjective variety, with a possible exception where both parties subjectively intended the lease as security. Neither the presence nor the absence of the option to purchase is conclusive, except with respect to the type of option described in clause (b). Ibid., p. 2. See also 1 Gilmore, Security Interests in Personal Property, § 11.2, pp. 338-9.
In holding that the agreement in that case was a true lease and not a security agreement, I relied upon certain facts distinguishable from the typical consumer rent-to-own arrangements as found in the Elliott case. The parties in American Beef had at all times dealt with each other as lessor and lessee. The goods in that case were fungible and not specifically identified as the subject matter of the potential purchase option. Timely payments had not been made by the lessee, so that the lessor was entitled to immediate possession. The full value of the goods was not to have been paid by the termination of the agreement, an additional consideration would have been necessary to effect ownership. The parties to the agreement before me are a consumer and a merchant; the rent-to-own item has been identified from the inception of the relationship. During the course of the transaction, the "lessee" bore full risk of loss, theft, or destruction of the rented property. Other than the nomenclature of the document, the parties had not dealt with each other as lessor and lessee. In fact, in a prior identical transaction, Ms. Elliott had completed payments and had become owner of a "leased" television. Further, in the instant case, it is stipulated by the parties that the fair market value of the leased goods is $350. By the terms of the document, upon the natural termination of the agreement, the debtor will have made total payments of $760 in bi-weekly installments. As of the petition date, Ms. Elliott had made timely payments totalling $440, a value in excess of the fair market value of the goods. It is undisputed that the debtor will become owner of the goods upon expiration of the term if all payments have been made in a timely manner.
Here, the document establishes unambiguous parameters. Upon compliance with the terms of the lease, ". . . owner will transfer property to renter." To disallow the security interest would contravene the statutory language of § 1-201(37)(b), deny the debtor the protection of the automatic stay and deprive her of the capacity to protect her equity in the merchandise built up by conscientious timely payments.
Accordingly, I find that the document through which the debtor has acquired possession of the subject matter goods is a purchase money security agreement despite its designation on its face as a lease. It, therefore, is
ORDERED that the subject goods be included in the debtor's Chapter 13 plan pursuant to the operative provisions of the Bankruptcy Code.