**In re Tommy POWERS and Robert Powers d/b/a Powers Brothers, Debtors.**

**No. 84–00061(SE).**

United States District Court,
E.D. Missouri,
Southeastern Division.

Aug. 23, 1984.

Rush Limbaugh, Jr., Cape Girardeau, Mo., for debtors.

Thomas E. Bischof, Dexter, Mo., for John Deere.

### ORDER

NANGLE, Chief Judge.

On March 26, 1984, John Deere Leasing Company (John Deere) filed its Motion To Compel Debtors In Possession To Assume Or Reject Leases and on June 25, 1984,

filed its Amended Motion To Compel Debtors In Possession To Assume Or Reject Leases.

Pursuant to Rule 27 of the Local Rules of this Court, the motion came on for hearing on June 27, 1984, before David P. McDonald, United States Magistrate. On August 23, said magistrate filed his Report and Recommendation.

After considering the entire record before the Court, it is ORDERED that

1. The magistrate's Report and Recommendation is approved.

2. John Deere's Motion To Compel Debtors In Possession To Assume Or Reject Leases, as amended, is sustained.

3. Debtors in possession shall on or before September 24, 1984, file with this Court its motion seeking approval either to assume or reject the leases in question.

4. If Debtors in possession shall fail to file any such motion, the leases shall be deemed to be rejected and John Deere shall thereafter be entitled to possession of the property covered by the leases.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE

DAVID P. McDONALD, United States Magistrate.

At issue before this Court is whether two equipment leases entered into by the John Deere Leasing Company (John Deere) as the Lessor, and the Debtors-in-Possession, Lessees, are truly leases of the equipment or whether they are actually "conditional sales" agreements. The issue arises from John Deere's Motion To Compel Debtors-in-Possession To Assume Or Reject Leases. This motion was referred to this magistrate pursuant to Rule 27 of the Local Rules of the United States District Court, Eastern District of Missouri.

John Deere takes the position that the documents in question are *bona fide* leases and has requested this Court to compel Debtors-in-Possession to assume or reject the leases. Debtors-in-Possession, (Debtors) on the other hand, take the position

that these instruments are only "conditional sales" agreements and not actually leases. Hence, they contend that they cannot be compelled to assume or reject these instruments and may modify John Deere's rights to the extent that they may modify the rights of any secured creditor.

The relevant facts presented at the hearing on John Deere's motion are these:

1. On June 8, 1982, Debtors executed a document entitled "John Deere Lease Agreement". Under the terms of this document, Debtors agreed to lease from John Deere a John Deere Model 7720 Combine and a John Deere Model 222 Flexible Platform for a term of five (5) years. Ten semi-annual rent payments of $8,352.00 each due on June 10 and December 10 of 1982 and thereafter until December 10, 1987, are required of Debtors. At the end of the five year term, Debtors have the option of purchasing the above equipment for $27,650.00.

2. On September 10, 1982, Debtor, Tommy Powers, apparently on behalf of Powers Brothers, executed another document entitled "John Deere Lease Agreement". Under its terms, the Debtors agreed to lease a John Deere Model 218 Draper Platform also for a term of five (5) years. Debtors were to make five annual lease payments of $2,156.39 each commencing on September 10, 1982, and thereafter until September 10, 1987. At the end of this five (5) year term, Debtors have the option of purchasing the platform for $3,675.00.

3. Except for the foregoing provisions, the remaining provisions of the leases are identical. The leases require the Debtors to make all repairs on the equipment except repairs covered under certain warranty provisions contained in the leases. Debtors assume the risk of loss on the equipment but John Deere agrees to carry physical damage insurance on this property at its own expense. Debtors agree to pay all taxes, registration fees, and license fees on the equipment, to maintain liability insurance on its operation of the equipment, and to hold John Deere harmless from any liability incurred in its operation. Both

parties recite that the agreement is intended as a lease and not a sale and that nothing contained in the document shall be construed as giving Debtors any right, title, or interest in the equipment except as a lessee.

4. Debtors defaulted on their payments due under these leases and on February 21, 1984, filed their petition for relief under Chapter 11 of the Bankruptcy Code.

5. At the hearing, John Massey, a representative of John Deere, testified that the combine and flexible platform would have sold for $79,000 new, were presently worth $50,000 and would be worth $27,650.00, the purchase option price, at the end of the lease term. He further testified that the draper platform would have sold for $10,500 new and was now worth $4,000.

6. At the same hearing, Tommy Powers, one of the Debtors, testified that when he approached the John Deere dealer regarding purchase of the combine and flexible platform, the dealer quoted him a price of $79,000 plus a high rate of interest if the purchase was made on an installment basis. Apparently, Mr. Powers then chose the arrangement in question as a preferable means of acquiring use of the equipment.

Debtors also offered the testimony of Charles Chilicutt, the John Deere dealer from whom Debtors acquired the equipment in question. Mr. Chilicutt testified that he would have sold the combine and flexible platform to the Debtors for $79,000 and that presently these items were worth $45,000 to $50,000. As for the draper platform, he testified that he would have sold it to Debtors for $10,500 and that, presently, this piece of equipment was worth $7,500. He further testified that at the end of the five year term, both sets of equipment would be worth more than 35 per cent of their original cash sales price.

CONCLUSIONS

■ As this Court has noted in other cases, security agreements or conditional sales agreements do not come within the scope of 11 U.S.C. § 365 and, therefore, trustees or debtors-in-possession cannot be compelled to assume them according to their terms or reject such agreements, *In re Boothe*, 19 B.R. 53, 59 (Bkrtcy.D.Utah 1982); *Matter of Rojas*, 10 B.R. 353 (Bkrtcy.App. 9th Cir.1981). Whether or not a lease actually constitutes a security agreement under the Bankruptcy Code depends on applicable state or local law, *Matter of Elliot*, 18 B.R. 602 (Bkrtcy.Neb. 1982).

■ The documents make no provision as to which state law applies. However, since all significant events occurred in Missouri, Missouri law applies. Missouri, as well as almost all jurisdictions, has adopted the Uniform Commercial Code (UCC) and, in particular, section 1–201(37) of the UCC, *see* 400.1–201(37), R.S.Mo. That section provides:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (Section 2–401) is limited in effect to a reservation of a "security interest". The term also includes any interest of a buyer of accounts or chattel paper which is subject to Article 9. The special property interest of a buyer of goods or identification of such goods to a contract for sale under Section 2–401 is not a "security interest", but a buyer may also acquire a "security interest" by complying with Article 9. Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (Section 2–236). Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

The factors that the courts have deemed relevant in considering whether a lease is a "true lease" or a security agreement are:

(1) the total amount of rent under the lease;

(2) whether the lease acquires any equity in the leased property;

(3) the useful life of the leased goods;

(4) the nature of the lessor's business, and

(5) the payment of taxes, insurance, and other charges normally imposed on ownership.

*Matter of Marhoefer Packing Company, Inc.,* 674 F.2d 1139 (7th Cir.1982).

After applying these factors to the facts at hand, the Court finds and concludes that the documents in question are truly leases and are not security agreements or conditional sale agreements.

Looking at these factors individually:

(1) The total amount of rent on each lease does exceed the cash sales price of each piece of equipment but not by such an amount that the rent payments appear to be the equivalent of "principal and interest" on an installment sale.

(2) Since the option purchase price is substantial in each case compared to the total rentals paid on the lease and is roughly equal to the market value of the equipment, there is no basis for finding an equity in the Debtors.

(3) Although there was no clear evidence on the useful life of the equipment in question, the fact that it had substantial value at the end of the lease term suggests that it has a useful life that exceeds the term of the lease.

(4) John Deere Company, as a whole, manufactures and sells through retailers farm equipment and implements. According to Mr. Massey's testimony, most of the sales of its equipment are for cash or on an installment basis. Only ten per cent (10%) of such sales take the form of the present lease with option to purchase arrangement. Thus, the situation is not one where an entity which has no other involvement in the industry acquires the property to be leased for the sole purpose of leasing it to the debtor.

(5) Except for the payment for physical damage insurance, all other incidents of ownership including payment of taxes and risk of loss do pass to the Debtors-Lessees. However, while this fact may suggest an installment sale, the other factors which suggest a lease outweigh its significance.

Hence, the arrangements in question are unexpired leases and under section 365(d)(2), the Debtors may be compelled to assume or reject them within a definite period of time.

RECOMMENDATION

The undersigned magistrate recommends that the district court enter its order sustaining John Deere's motion and compelling Debtors to seek approval to assume or reject the equipment leases in question on or before September 24, 1984.

The parties are advised that they may file objections to this report within ten (10) days of the date of service of a copy of this report upon them.