## In re Theodore FRANCIS and Pansy E. Francis, Debtors.

### Bankruptcy No. 84–00080(SE).

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

Oct. 5, 1984.

Peter D. Kerth, St. Louis, Mo., for debtors.

Daniel E. Reuter, Clayton, Mo., for movant.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

On September 5, 1984, this Court entered its order denying Movant, Equitable Life Leasing Corporation f/k/a Equico Lessors, Inc.'s Motion To Compel Debtor To Seek Approval To Assume Or Reject Lease and also conditionally denying its Motion For Relief From Automatic Stay.

This motion raised two issues:

(a) whether the agreement between the parties is a true lease, capable of assumption or rejection, or whether it is a conditional sales agreement, capable of being modified in a Chapter 11 proceeding, and

(2) if the agreement between the parties is a conditional sales agreement, whether Movant is nonetheless entitled to relief from the automatic stays in order to reclaim possession of the equipment covered by this agreement.

FACTS

1. On July 29, 1981, Debtor, Theodore Francis, and the Movant executed a document entitled Equipment Lease. Debtor, Pansy Francis, on that same day, signed a personal guaranty of this document.

2. Under the terms of this Equipment Lease, the Debtors agreed to lease from Movant seven (7) new turbines and four (4) power supply engines for a term of ten (10) years, and to pay Movant, as rent, the sum of $12,593.90 annually, plus applicable taxes, commencing on August 10, 1981, and thereafter on August 10th of each succeeding year for the term of the lease. The lease was later modified to change the rental payment due date to October 10th of each year.

3. Other provisions of the Equipment Lease specified that:

(a) Movant was not the manufacturer of the equipment, merely purchased the equipment already selected by the Debtors for the sole purpose of leasing it to them, did not make any warranties with respect to the equipment, and that any defect or unfitness for use of the equipment would not relieve Debtors of their obligation.

(b) Movant was the sole owner of the equipment and Debtors had no right, title, or interest other than the right to use the equipment for the term of the lease conditioned upon their compliance with its terms.

(c) Debtors assumed all risk of loss, theft, damage or destruction to the equipment, were obligated to maintain the equipment in good repair at their own expense, and were required to maintain, also at their expense, insurance of the equipment.

(d) Debtors agreed to indemnify and hold harmless Movant from any liability arising from the use of the equipment and also to pay all taxes, license, and registration fees assessed on the equipment.

(e) Upon default, Movant had the right to accelerate and demand payment of all rentals due, to take possession of the equipment, to sell or release the equipment and to apply the proceeds to the balance owed Movant.

4. Debtors defaulted on the October 10, 1983, payment and have been in default under the terms of the Equipment Lease since that time.

5. At the hearing on this motion, Movant offered the testimony of Shane Edward Taylor, an employee of Movant familiar with company policy on lease transactions such as the one in question. Mr. Taylor testified that ordinarily the equipment has a useful life of ten (10) years, the same as the term of the lease. Although the lease is silent on whether a lessee has an option to purchase the equipment, Movant does allow a lessee to purchase the equipment for its fair market value at that time. Movant does carry such equipment on its books as being worth ten per cent (10%) of its original value.

6. Debtor, Theodore Francis, also testified at the hearing. He stated that, at the time of the execution of the lease, the cash purchase price of the equipment in question quoted him was $58,850. According to this Debtor, Mr. Taylor had advised him that the equipment could be purchased at the end of the lease for ten per cent (10%) of its original purchase price. Further, in Mr. Francis' opinion, the turbines and all the rest of the equipment except the engines, have a useful life of twenty (20) years while the engines have a use life of fifteen (15) years. Mr. Francis also estimated the value of the equipment at the end of ten (10) years to be thirty (30) to forty (40) per cent of its original purchase price.

## CONCLUSION

### (1) *Is this a true lease or actually a conditional sale?*

The first issue the Court must address is whether the transaction in question is truly a lease or whether the transaction is actually a conditional sale of the equipment to Debtors with Movant assuming the role of a secured creditor. If it is truly a lease, then Debtor may be compelled to assume the lease with all its obligations or to reject the lease and lose the equipment. If it is a conditional sale, then the transaction does not come within the purview of section 365 of the Bankruptcy Code. *In re Boothe*, 19 B.R. 53, 59 (Bkrtcy.D.Utah 1982); *Matter of Rojas*, 10 B.R. 353 (Bkrtcy.App. 9th Cir. 1981).

Whether or not a purported lease actually constitutes a security interest under the Bankruptcy Code depends on applicable state or local law, *House Report No. 95–595*, 95th Cong. 1st Sess. (1977) pp. 313–14; *Senate Report No. 95–989*, 95th Cong. 2d Sess. (1978) p. 26; *Matter of Elliott*, 18 B.R. 602 (Bkrtcy.Neb.1982).

From reviewing the record, most, if not all, of the significant events in this matter occurred in Missouri and, therefore, Missouri law is applicable.

Section 400.1–201(37), R.S.Mo. defines a "security interest" as:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (section 400.2–401) is limited in effect to a reservation of a "security interest". The term also includes any interest of a buyer of accounts, chattel paper, or contract rights which is subject to article 9. The special property interest of a buyer of goods on identification of such goods to a contract for sale under section 400.-2–401 is not a "security interest", but a buyer may also acquire a "security interest" by complying with article 9. Unless a lease or consignment is intended as

security, reservation of title thereunder is not a "security interest" but a consignment is in any event subject to the provisions on consignment sales (Section 400.-2–326). Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

The Court can find no Missouri cases that are particularly pertinent to the instant facts. Movant cites *Commercial Credit Equipment Corporation v. Colley*, 542 S.W.2d 329 (Mo.Ct.App., K.C.D.1976) as supporting its position that the transaction constitutes a lease. However, that case actually construed former sections 428.100, *et seq.*, R.S.Mo., which were repealed on July 1, 1965, when Missouri adopted the Uniform Commercial Code and, thus, is not sound authority for Movant's position.

Cases from other jurisdictions have generally looked at such factors as whether

(a) the lessor is merely a seller or financier in "lessor's clothing";

(b) the lease period approximates the useful life of the property leased;

(c) the aggregate rentals called for under the purported lease far exceed the original value of the property;

(d) the purported lease permits the lessee to purchase the property at a nominal consideration at the end of the lease term;

(e) the lessee assumes most or all of the legal incidents of ownership (payment of taxes, bearing risk of loss or damage to the property, etc.), and

(f) the lessor, upon default, has the right to accelerate all future rentals due under the agreement,

*see, White & Summers, Handbook of the Law Under The Uniform Commercial Code*, section 22–3, pp. 759–765 (1972 Ed.); also, *In the Matter of Marhoefer Packing Co.*, 674 F.2d 1139, 1145 (7th Cir.1982); *In the Matter of Fashion Optical, Ltd.*, 653 F.2d 1385 (10th Cir.1981).

After assessing the facts underlying the instant motion, the Court concludes that the purported lease entered into by Movant and the Debtors is, in reality, a conditional sales agreement and, therefore, not within the purview of section 365 of the Bankruptcy Code.

The agreement itself acknowledges that Movant is not a manufacturer of the equipment and only purchased it in order to, in turn, "lease" it to the Debtors. The aggregate rentals under the agreement total $125,939.00, more than twice the amount of the original purchase price of $58,850. Debtors were required to pay all taxes and insurance on the equipment and bore the risk of its loss. Movant had the right to accelerate all future rentals under the purported lease in the event of Debtors' default. Although Movant's witness insisted that the equipment could only be purchased at its "fair market value" upon the lease's expiration, the evidence strongly suggested that the equipment could be purchased for ten per cent (10%) of its original value, a percentage considered by several courts to be a "nominal consideration" within the above-quoted section of the Uniform Commercial Code. *See, White & Summers, supra*, p. 764.

The evidence of the equipment's useful life was conflicting. Movant's witness testified that it had a useful life of ten (10) years. Debtor, Theodore Francis, rather ironically and perhaps with the requirements of adequate protection in mind, testified that the equipment had a useful life of at least fifteen (15) years. If this Debtor's testimony was accurate, his position that this transaction is really a conditional sale would be, perhaps, undermined. However, the Court does not accept his testimony and finds the testimony of Mr. Taylor to be the more accurate. Hence, the useful life of the equipment in question is the same as the term of the purported lease.

(2) *Termination of the Automatic Stays.*

Having thus concluded that the agreement between the Debtors and Movant is actually a conditional sale or secured transaction, the Court must now consider whether the automatic stays under 11 U.S.C. 362(a) should be modified to permit Movant to reclaim the equipment as prayed.

11 U.S.C. 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

*Equity*

The parties stipulated that Debtors have no equity in the subject equipment.

*Necessity To An Effective Reorganization*

■ Debtor, Theodore Francis, testified that the equipment at issue, turbines, engines, and other miscellaneous equipment, were used as part of his irrigation system for his farming operations. Irrigation of farm crops, of course, is necessary if Debtors' farm experiences insufficient rainfall.

Although Debtors have not yet filed a proposed plan of reorganization, the successful operation of their farms would clearly enhance their chances of reorganization. Hence, the Court concludes that the equipment is necessary for an effective reorganization by Debtors.

Hence, 362(d)(2), being in the disjunctive, affords no basis for relief from the automatic stays.

*Adequate Protection*

Section 361(1) of the Bankruptcy Code states:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity inproperty, such adequate protection may be provided by—

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

Debtors, at the hearing, and in their post-trial memorandum, offered to pay the sum of $250 per month as adequate protection for Movant's interest in the equipment.

Although there is no direct evidence of whether the equipment does depreciate and, if so, at what rate, the fact that it's useful life is ten (10) years suggests that the equipment depreciates at a rate of ten (10%) per cent of its original cost each year. Hence, the equipment depreciates at a rate of approximately $6,000 per year or $500 per month. Thus, Debtors' offer of $250 per month is clearly inadequate. Moreover, under the express terms of the above-quoted section, Movant is also entitled to compensation for the amount of depreciation that has accrued since the filing of its petition for relief on March 1, 1984.

The Court has already entered its order on September 5, 1984, denying Movant's prayer to compel Debtors to assume or reject its purported lease and conditioning continuance of the automatic stays under 11 U.S.C. 362(a) upon Debtors' complying with the requirements of the order.