**In re SIMASKO PRODUCTION COMPANY, Debtor.**

**Bankruptcy No. 84 B 3537 G.**

United States District Court,
D. Colorado.

March 8, 1985.

Calkins, Kramer, Grimshaw & Harring by T. Edward Icenogle, Denver, Colo., for debtor.

Holme Roberts & Owen by Stephen E. Snyder, Denver, Colo., for Petrowarrier Oil & Gas, Inc.

## MEMORANDUM ORDER

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER is before the Court on the "Debtor's Combined Motions for Authorization to Enter Into Agreements to Obtain Credit and For Other Assistance During Reorganization and to Rescind and Cancel Business Broker Agreement."

Through this motion, the debtor, Simasko Production Company (Simpco), seeks court authority to:

(1) enter into a Fee Agreement with Commodore Resources Corporation (Commodore) for management, financial and other assistance during reorganization;

(2) execute an Interim Financing Agreement with Metro National Bank and/or First Interstate Bank of Alaska (the Banks);

(3) enter into an Interim Financing Agreement with Commodore; and,

(4) rescind and cancel the Business Broker Agreement with David M. Watt.

Petrowarrior Oil & Gas, Inc. (Petrowarrior) has objected to the combined motion. After notice, a hearing was commenced February 28, 1985. The hearing concluded March 1, 1985. This order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to B.R.P. 9014 and 7054.

Petrowarrier objects only to those portions of the combined motions which relate to the Fee Agreement and Interim Financing Agreement with the banks or rescission and cancellation of the Broker Agreement with Mr. Watt. The unobjected-to portions of the combined motions are discussed only as necessary to provide background for the objection of Petrowarrior.

### I. *Introduction*

On July 25, 1984, Simpco filed a petition under Chapter 11 of Title 11. As debtor-in-possession, Simpco has continued the operation and management of its business in the exploration, development and production of oil and gas. Simpco's assets include several promising exploratory prospects. Since the inception of this Chapter 11, it has been apparent that the investment of a third party would be necessary to provide funds for drilling.

On August 7, 1874, the debtor sought approval under § 327 to employ David W. Watt. Mr. Watt was to attempt to find parties interested in investing in Simpco. The employment agreement with Mr. Watt

was approved by this Court on August 14, 1984. Under the terms of the employment agreement, if Mr. Watt was successful in arranging capital to effect a plan of reorganization, the debtor would pay Mr. Watt $100,000 and convey to him a two percent overriding royalty interest in the debtor's undeveloped acreage. In the event that Mr. Watt or any of his affiliates participated in making the capital investment, the fee would be proportionately reduced.

The agreement with Mr. Watt was non-exclusive. Thus, Simpco also initiated negotiations with Banks and Commodore regarding the infusion of capital to effect a plan of reorganization. By orders dated September 20, 1984 and October 31, 1984, Simpco was authorized to borrow $400,-000.00 from the Banks, on a senior basis, under § 364(d) of the Code. The Interim Financing Agreement with the Banks, which Simpco requests authority to execute represents the final loan agreement for the $400,000.00 borrowing previously authorized. This loan was the result of Simpco's own efforts.

On February 11, 1985, Simpco filed an amended plan of reorganization. The disclosure statement for this plan has been approved and the creditors are currently casting their ballots to determine acceptance or rejection of the plan. Under the terms of the present plan, Commodore will receive 100% of the common stock of the debtor. Commodore's interest would be subject to dilution by preferred stockholders, who may convert their preferred stock into common stock.

Generally, the plan requests both secured and unsecured creditors to "stand still" for a period of time. During this period, Simpco will continue its business and drilling operations with monies borrowed, post-petition, from the Banks and Commodore. Whether or not unsecured creditors receive any distribution from the Simpco estate is highly dependent on the success of drilling operations conducted during the stand-still period.

## II. *The Combined Motions*

### (A) *Unobjected-to Portions*

■ Turning to the motions at bar, there are no objections to that part of the combined motions which requests authority to execute the Interim Financing Agreement with the Banks. This Court has previously authorized this senior priority borrowing after notice and a hearing. Court authorization to execute the agreement appears only to be a formality to placate the nervous bankers. The debtor is hereby granted authority to execute the Interim Financing Agreement with the Banks.

■ Similarly, there are no objections to that part of the combined motions which seeks authority to rescind and cancel the agreement with David M. Watt. The Business Broker Agreement was non-exclusive. There is no indication that Mr. Watt performed any services which would entitle him to a fee. The debtor is hereby granted authority to rescind and cancel the Business Broker Agreement with David M. Watt.

### (B) *Fee Agreement With Commodore*

The terms of the Fee Agreement have been the subject of considerable dispute between Simpco and Petrowarrior. This Agreement is between Simpco, Commodore and David M. Watt. This Court had previously approved a Business Broker Agreement, on August 14, 1984, whereby Watt would be entitled to compensation as a broker similar to the compensation now sought by Commodore under the Fee Agreement now before the Court. This Fee Agreement appears to have been entered into in approximately October, 1984, although this is not entirely clear. As I understand the Agreement, the terms are basically as follows:

Commodore has supplied and will continue to supply Simpco with management and other services prior to confirmation of a plan of reorganization. These services primarily consist of assisting Simpco in acquiring financing to support its operations in maintaining and developing its oil and

gas properties. The real purpose of this assistance is to enable Simpco to develop a plan of reorganization whereby Commodore will ultimately become the 100% owner of Simpco. This is consistent with the plan presently before the Court. Simpco and Commodore have agreed in the Fee Agreement that Commodore's fee will be $100,000.00, together with a two percent overriding royalty in certain Alaskan oil and gas properties held by Simpco. However, the parties have agreed that if a plan of reorganization acceptable to Commodore (such as the plan Simpco presently has before the Court) is confirmed, Commodore will waive both the $100,000.00 fee and the overriding royalty. If a plan of reorganization not acceptable to Commodore is confirmed, Commodore is to receive its fee in full. Finally, if no plan of reorganization is approved or this case is converted to a liquidation under Chapter 7 of the Bankruptcy Code, Commodore will waive the overriding royalty interest only.

It is proposed that the $100,000.00 portion of the fee, as well as the funds which are the subject of the Interim Financing Agreement, shall be secured by a super-priority senior lien on Simpco's interest in certain leases, equipment and production. The fee previously described is deemed by virtue of the Fee Agreement to have been earned by Commodore as follows: 40 percent of the fee shall be deemed to have been earned as of September 30, 1984; 80 percent of said fee shall be deemed to have been earned as of October 31, 1984; and 100% of said fee shall be deemed to have been earned as of November 30, 1984. This matter was not presented to the Court until December 7, 1984, when the Fee Agreement was attached as an Exhibit to debtor's Combined Motions for Authorization to Enter Into Agreements.

Pursuant to a subpoena issued by Petrowarrior, Richard Langdon, the President of Commodore, produced a compilation of the costs incurred by Commodore in aiding Simpco in the reorganization process. This compilation was marked and received as creditor's Exhibit 2. This Exhibit indicates that Commodore has incurred a total cost

in connection with the Simpco reorganization in the amount of $157,434.24. A portion of these costs consists of $87,000.00 in professional fees. Many of these professional fees were incurred as early as September, 1984.

Petrowarrior objects to the Commodore Fee Agreement on two grounds. First, Petrowarrior asserts that approval of the Agreement will subvert the Chapter 11 process by placing undue pressure on Simpco's creditors to accept the present plan of reorganization. Secondly, Petrowarrior asserts that the Fee Agreement is an attempt to compensate professionals without compliance with 11 U.S.C. § 330. The compensation of professionals complained of by Petrowarrior refers to those professionals already paid by Commodore.

I view the Fee Agreement as an effort to compensate Commodore, regardless of whatever fees it may have paid to its professionals, for services rendered by Commodore. I agree with Petrowarrior that Commodore's Fee Agreement should be the subject of notice and a hearing and Court approval, with the Court to set reasonable compensation for actual necessary services to be rendered. There is no doubt Commodore has made professional and management services available to Simpco during the reorganization process. Commodores activities have resulted in substantial savings and benefit to the estate. Commodore has not and does not intend to bill the estate directly for the services set forth in Exhibit 2. However, Commodore does expect these fees if a plan of reorganization not acceptable to it is confirmed by the Court. Thus, Commodores motives are not strictly benevolent on behalf of the estate. Commodore has incurred costs in developing an attractive business opportunity for itself. Its Fee Agreement is tied to the Interim Financing Agreement. They appear to be part of the same transaction. Commodore's efforts through the Interim Financing Agreement will greatly enhance Simpco's liability as an entity capable of reorganization. It will also provide the opportunity for a plan of reorganization that

will allow Commodore to become the owner of Simpco and develop oil and gas properties now held by Simpco. It is understandable that Commodore wishes to secure protection of its interest in Simpco as a result of efforts heretofore initiated by Commodore.

■■■ I am troubled by the late date at which the Fee Agreement has been presented to the Court for approval. It was not even filed with the Court until after the fee was earned pursuant to the Fee Agreement. It is reasonably well settled in this district that professional fees incurred prior to Court approval of the professional's employment are not generally allowable as an administrative expense under § 330 of the Code. I have previously had occasion to discuss the question of allowance of compensation for services performed prior to Court authorization. *See In re Werth,* 32 B.R. 442 (Br.Colo.1983). I took the position there, and reaffirm here, that there are circumstances under which equity and fairness require bankruptcy court approval of services on a *nunc pro tunc* basis. However, I do not feel those circumstances prevail here. Commodore has invested sums and efforts which, while admittedly beneficial to this estate, are really in pursuance of Commodore's own business opportunity. If that opportunity and plan of reorganization attendant thereto are approved, Commodore will be compensated for its efforts. I also feel that any management services provided to Simpco by Commodore subsequent to December 7, 1984, the date the Fee Agreement was filed for approval with the Court, should be approved with the fees attendant thereto to be the subject of notice, hearing and Court approval separate from the motions now before me.

Accordingly, the Fee Agreement, as proposed, is denied. However, Commodore's employment to provide management services to Simpco and to assist Simpco in its reorganization is approved, effective December 7, 1984, with any fees for those services to be the subject of future application for compensation, with notice, hearing and Court authorization to follow.

### (C) *Interim Financing Agreement With Commodore*

The Interim Financing Agreement provides that Commodore will loan Simpco an amount not to exceed $375,000.00 for the purpose of drilling up to seven development wells on four separate Simpco prospects. If a plan of reorganization acceptable to Commodore is confirmed, Commodore will also loan Simpco up to $250,000.00 to repay other post-petition loans to the Banks. Commodore's lending would be secured by the super-priority senior lien on the development wells, which will also secure, on a *pari passu* basis, the Banks' post-petition financing.

Petrowarrior objects to the Interim Financing Agreement with Commodore on the ground that it does not believe the drilling program to which the borrowed funds will be applied is a good economic risk. The drilling program anticipates the drilling of up to seven wells. Petrowarrior has no objection to five of the seven wells. Indeed, Petrowarrior and Simpco are partners for the purpose of drilling two wells— the Petrowarrior No. 3 and No. 4. Simpco's share of the drilling expense would come from the Interim Financing Agreement with Commodore. Thus, if that Financing Agreement is not approved, Simpco will likely be unable to provide its share of the partnership expenses, and Petrowarrior would have the opportunity to assume Simpco's position.

Petrowarrior's stated objection pertains to its questioned wisdom of drilling the Ebendorf No. 2 and No. 3 wells.

■■ Petrowarrior does not dispute that Simpco is unable to obtain financing on an administrative priority basis. The parties agree that Simpco has made the requisite showing of the unavailability of funds under § 364(c) and (d). Additionally, Petrowarrior has made no claim that it is not adequately protected. In any event, as an unsecured creditor, Petrowarrior does not have an interest for which adequate protec-

tion must be provided. *In re Garland Corp.*, 6 B.R. 456 (B.A.P.Mass.1980).[1]

Both Simpco and Petrowarrior presented expert testimony regarding the economics of the wells in dispute. The testimony conflicted as to the potential income from the wells and the amount of risk involved. It is quite clear that risk is, indeed, involved. However, it is the quantum of that risk that is in controversy.

As a debtor-in-possession, Simpco has authority to operate the business. 11 U.S.C. § 1108. The authority to operate that business necessarily includes the concomitant discretion to exercise reasonable judgment in ordinary business matters. *In re Columbia Motor Express, Inc.*, 33 B.R. 389 (M.D.Tenn.1983). The business of this debtor-in-possession includes oil and gas drilling operations. Simpco's best business judgment indicates these drilling operations are necessary and reasonable for the benefit of the estate. The discretion to act with regard to business planning activities is at the heart of the debtor's power. *In re DeLuca Distributing Co.*, 38 B.R. 588 (Bankr.N.D.Ohio 1984). In exercising Simpcos business judgment of conducting its drilling operations, it has found it necessary to obtain loans to make these endeavors possible. This is in accordance with the exercise of its sound business discretion.

Business judgments should be left to the board room and not to this Court. *Matter of Lifeguard Industries, Inc.*, 37 B.R. 3 (Bankr.S.D.Ohio 1983). Only in circumstances where there are allegations of, and a real potential for, abuse by corporate insiders should the Court scrutinize the actions of the corporation. *Id. See also, In re Lyon and Reboli, Inc.*, 24 B.R. 152 (Bankr.E.D.N.Y.1982). There are no allegations of insider abuse in this case.

In this case there is an additional reason for this Court not to disturb the proposed drilling program. This drilling program is an integral part of the proposed plan of reorganization. The economics of the drilling program were discussed in the amended disclosure statement, which this Court approved and to which Petrowarrior consented. Simpco's creditors are currently voting on this plan. I shall not disturb the business judgment of the debtor if the requisite number of creditors approve it as a part of a plan of reorganization. Confirmation of this plan is a condition precedent to finalizing the Interim Financing Agreement with Commodore. Therefore, it should not be for this Court to second guess the wisdom of the proposed drilling program.

IT IS THEREFORE ORDERED as follows:

1. That the debtor is authorized to enter into the Interim Financing Agreement with Metro National Bank and/or First Interstate Bank of Alaska;

2. That the debtor is authorized to enter into the Interim Financing Agreement with Commodore Resources Corporation;

3. That the debtor is authorized to incur the super-priority credit under 11 U.S.C. § 364(c)(1) and grant the senior liens under 11 U.S.C. § 364(d) contemplated by the Interim Financing Agreement;

4. That the debtor is authorized to rescind and cancel the Business Broker Agreement between it and David M. Watt previously approved by this Court on August 14, 1984; and

5. The debtor's motion to enter into the Fee Agreement with Commodore Resources Corporation for management, financial and other assistance during reorganization is denied to the extent that such Agreement provides for the payment of a $100,000.00 fee and a two percent overriding royalty interest. The fees for any services performed by Commodore Resources from and after December 7, 1984, may be the subject of future motions filed with this Court.

---

1. Simpco has listed Petrowarrior as having a disputed unsecured claim. I find no proof of claim filed by Petrowarrior.

6. IT IS FURTHER ORDERED that the stay imposed under 11 U.S.C. § 362 is hereby modified to permit Metro National Bank and/or First Interstate Bank of Alaska to record the mortgage and other security instruments against property of the debtor in accordance with the terms of the Interim Financing Agreement.

FURTHER ORDERED that within ten (10) days of the date of this order, any party may file a written request for the withdrawal of his exhibits received in evidence or in the possession of the Court. Upon conclusion of all appellate review pertinent hereto, or upon expiration of time to initiate such review, as the case may be, exhibits so requested shall be returned. Thereafter, the Clerk may destroy or otherwise dispose of any exhibits not requested and returned in accordance with this order.