In re FUNDING SYSTEMS ASSET MANAGEMENT CORPORATION, Debtor.

FUNDING SYSTEMS ASSET MANAGEMENT CORPORATION, Plaintiff,

v.

KEY CAPITAL CORPORATION, f/k/a FBI Leasing Ltd., f/k/a FCB Leasing Ltd., Defendant.

Bankruptcy No. 81–2861.

Adv. No. 84–191.

United States Bankruptcy Court, W.D. Pennsylvania.

March 30, 1987.

Thomas S. Galey, Pittsburgh, Pa., for debtor/plaintiff; M. Bruce McCullough, Buchanan Ingersoll, P.C., of counsel.

Stephen J. Laidhold, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Debtor's *Complaint For Recovery Of Property Of The Estate* pursuant to 11 U.S.C. § 549(a), and Defendant's Counterclaim thereto. The Debtor seeks Court approval for the return of lease payments made to the Defendant, pursuant to § 549(a) of the Bankruptcy Code, from the date of the bankruptcy filing. Defendant seeks Court authorization to retain said payments, and further requests a finding that the Debtor remains liable for the outstanding balance due under said lease.

A hearing was held on the aforementioned issues, at which time testimony was offered; briefs were submitted thereafter. Based upon these offerings and this Court's further research, we find that the Debtor is not entitled, pursuant to § 549, to avoid the lease payments made; further, Defendant is entitled to payment for monthly rental fees from February 1984 through December 1985; however, because Defendant failed to timely file a claim, as required by the Court Order confirming Debtor's Plan of Reorganization, Defendant is not entitled to any payments due after December 1985.

## FACTS

Defendant purchased a telephone system on March 8, 1979 from F/S Communications Corporation ("F/S Comm. Corp."), the Debtor's sister corporation, for the sum of $85,000.00. Pursuant to an equipment lease also dated March 8, 1979, Defendant, as lessor, entered into an agreement with Debtor, as lessee, for the rental of said system. The lease was for a term of seven (7) years, with monthly payments of $1,614.59, including sales and use taxes. This lease obligation was guaranteed by FSC Corp., the Debtor's parent corporation. Payments were made by the Debtor through February of 1984, leaving twenty-four (24) monthly installments unpaid.

Concurrently, in June of 1980, Debtor leased new equipment and, without notice to Defendant, transferred the bulk of Defendant's equipment to F/S Comm. Corp., the Debtor's sister corporation and original owner, which ultimately transferred said equipment to a bona fide purchaser for value. The only items retained by Debtor were one (1) CRT and one (1) teletype terminal. Debtor, mysteriously, has no ability to determine the name of the bona fide purchaser, the amount of the consideration, the whereabouts of the equipment or, the whereabouts of the proceeds of their sale.

Debtor filed for Chapter 11 bankruptcy protection on October 23, 1981. In the ordinary course of the Debtor's operation of the estate, rental payments pursuant to the lease provisions continued. In May of 1984, Debtor filed with the Clerk of Courts a petition to reject this equipment lease. For reasons unknown to this Court, Debtor chose not to pursue this motion, and no order was entered thereon. On December 18, 1985, Debtor's Plan of Reorganization was confirmed, which called for the rejection of all executory contracts and unexpired leases not previously assumed or rejected. Said Plan granted interested parties thirty (30) days after said Plan Confirmation to file claims resulting from such rejections.

Although service of the Plan was made pursuant to their instructions, Defendant did not timely file such a claim, but first raised said claim in its Answer and Counterclaim filed in May of 1986.

## ANALYSIS

■ Debtor's reliance upon §§ 549(a)(1) and (2)(B) and 1107, founded upon the above-stated facts, clearly lacks any reasonable and equitable basis. Section 549(a) states in pertinent part:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(B) that is not authorized under this title or by the court.

Pursuant to § 1107, the debtor-in-possession has the right to bring this action, in its capacity as the trustee in this case. We acknowledge that the Debtor is attempting to retrieve property transferred after the commencement of the case, and that no Court Order has been entered authorizing the transfer. However, it is not necessary to obtain such Court approval, as the Code itself provides the necessary authorization in § 1108, wherein it states:

Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business.

This section has been consistently interpreted as including the debtor-in-possession's authority to operate the business and to exercise reasonable business judgment with regard to its payments made in the ordinary course of its business. *In re Simasko Production Company*, 47 B.R. 444 (D.Colo.1985); *In re James A. Phillips, Inc.*, 29 B.R. 391 (S.D.N.Y.1983); *In re Manwell*, 62 B.R. 533 (Bankr.N.D.Ind. 1986); *In re Dave Noake, Inc.*, 45 B.R. 555 (Bankr.D.Vt.1984).

The case of *In re Manwell, supra*, is especially poignant, wherein the debtor-in-possession managed to accumulate $1.6 million in postpetition debt before his death. The successor Trustee sought to recover funds paid out by the debtor during the course of the bankruptcy, in order

to fund the administrative expenses. In dismissing the action, the Court stated:

> The expenses which a Chapter 11 debtor incurs and pays in the ordinary course of his business cannot be avoided ... The alternative would make it impossible for any prudent business person to voluntarily do business, even on a cash basis, with a Chapter 11 debtor.

62 B.R. at 534.

In the case at bar, the Debtor made regular lease payments and retained the equipment. Although the Debtor insists that the majority of said equipment was transferred to its sister corporation, F/S Comm. Corp., which transferred same to an undisclosed buyer for an undisclosed consideration, the equipment still remains withheld from Defendant. That the Debtor gave up possession of the equipment to another party does not change the fact that the Debtor is deemed to have received full and fair value for the lease payments made. Therefore, Defendant is entitled to retain those lease payments made by the Debtor through February of 1984.

■ Defendant argues that it is entitled to the remaining lease installments not yet paid. We agree in part and disagree in part. Debtor did not effectively reject the unexpired lease until December 18, 1985, the date of its Plan confirmation. It is well recognized, that until a determination to assume or reject is made, the estate is liable for the reasonable value of the use and occupancy of the leased object; this amount is usually equal to the rental payments. *In re Stable Mews Associates,* 35 B.R. 603 (Bankr.S.D.N.Y.1983); 3 *Collier on Bankruptcy,* ¶ 365.03, pp 365–32 to 365–34.

While some courts have allowed claims only to the extent of the debtor's *actual* use, e.g., *In re Peninsula Gunite, Inc.,* 24 B.R. 593 (9th Cir.1982); *In re Cardinal Export Corporation,* 30 B.R. 682 (Bankr. E.D.N.Y.1983), this Court finds the more logical and rational method of determination to be measuring the claim by the reasonable value of the leased property. *See, In re Energy Resources Company, Inc.,* 47 B.R. 337 (Bankr.D.Mass.1985), and cases cited therein.

As stated in *Energy Resources,*

> The lessor has a right to assume that until a debtor rejects a lease the leased property is being used for the purpose for which it was leased and that the debtor will pay the reasonable value of the property measured by such use.

47 B.R. at 338–9, quoting from *Matter of Fred Sanders Company,* 22 B.R. 902 (Bankr.E.D.Mich.1982). *Contra In re Intran Corporation,* 62 B.R. 435 (Bankr.D. Minn.1986). Further, the payments for use and occupation are characterized as administrative expenses, giving them priority status for payment. *Matter of Braniff Airways, Inc.,* 783 F.2d 1283 (5th Cir.1986); *Matter of Schulz,* 63 B.R. 163 (Bankr.D. Neb.1986); *In re Energy Resources Company, Inc., supra.*

In the above-cited decisions, even though the creditors received only administrative claims, as opposed to actual payment, they *did* receive the return of their leased property. In the case at bar, not only does the Debtor deny its obligation to make the past lease payments, it also believes it should be released from any responsibility to return Defendant's equipment. Such a result would effectively require Defendant to consider its equipment to be a donation to the Debtor's rehabilitation efforts. This is not only inequitable, it is also completely irrational. This factual scenario also explains why the *Intran* case must be distinguished. In *Intran,* the lessor ceased to receive rental payments before the filing of the lessee's bankruptcy. The court faulted the lessor for not seeking relief from stay to protect its rights. In the instant case, Defendant continued to receive rental payments for two and one-half (2½) years post-petition. It had no reason to seek such relief.

Even if Defendant had sought relief when Debtor became delinquent, Defendant would have had nothing to reclaim, as Debtor admits that much of the equipment was transferred to its sister corporation prior to the bankruptcy filing.

The responsibility for administrative expenses is based on the equitable principle of unjust enrichment, rather than compensation of the creditor's loss. *In re Dixie Fuels, Inc.*, 52 B.R. 26 (Bankr.N.D.Ala. 1985). Given the case at bar, wherein Debtor *could* be released from liability for both the rental payments and the return of the equipment, causing Defendant to be saddled with the loss of both its lease payments and its property, this Court is hard pressed to believe that a stronger case could be made for unjust enrichment.

It is also interesting to note that Debtor has not sought a similar avoidance against F/S Comm. Corp., the transferee of Defendant's equipment. It is noteworthy in this respect that, although the two (2) corporations share some of the same officers and/or directors, and generally the same cast of characters, they are less than certain as to the dates of transfer between themselves, and claim absolute ignorance as to the date of transfer to the bona fide purchaser or the amount therein received. This inaction is compounded by the fact that Debtor never received any consideration from the transfer to its sister. Debtor cannot "stick" Defendant twice, and not pursue other remedial avenues as well.

Debtor discontinued making rental payments after February 1984, and its Plan of Reorganization was confirmed on December 18, 1985. Defendant is therefore entitled to an administrative expense payment covering twenty-two (22) installments of $1,614.59, totaling $35,520.98. Said administrative payment must be made in the same manner as all other administrative payments.

Debtor included a paragraph in its confirmed Plan of Reorganization, allowing interested parties thirty (30) days from the date of the Plan confirmation, to file claims resulting from rejected contracts and leases. Through the Affidavit of Debtor's counsel, Debtor averred that a copy of said Plan, along with a copy of its Disclosure Statement and a ballot, was served on Defendant at its corporate address in Wellesley Hills, Massachusetts. Defendant did not return the submitted ballot, nor did it file a claim as required. Defendant cannot argue that said service was insufficient. Defendant's own pre-trial statement lists the Wellesley address as it corporate address. Service upon said address was sufficient to provide notice. Any payments due after the date of Plan confirmation were and are discharged by the December 18, 1985 Order confirming said Plan.

An appropriate Order will be issued.