In re CHAMA, INC., DCH, Inc., Callaway Community Hospital Association, Medical Center of Winnie, Inc. and Colusa Community Hospital Association, Debtor.

Chama, Inc., and Colusa Community Hospital Association, Plaintiffs,

v.

First Northern Bank and Trust, Defendant.

Bankruptcy No. 98–2252 (MFW).

Adversary No. A–99–301 (MFW).

United States Bankruptcy Court, D. Delaware.

April 26, 2000.

Opinion Denying Reconsideration Sept. 21, 2000.

mated to be due".

S. David Peress, Michael R. Nestor, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, for debtors.

Alan R. Gordon, Mark Minuti, Jeffrey C. Hampton, Saul, Ewing, Remick & Saul LLP, Wilmington, DE, for the Official Committee of Unsecured Creditors.

Jeffrey R. Hughes, Varnum, Riddering, Schmidt & Howlett, LLP, Grand Rapids, MI, for First Northern Bank and Trust.

William H. Sudell, Eric D. Schwartz, Morris Nichols, Arsht & Tunnell, Wilmington, DE, John D. McLaughlin, Jr., Maria Giannarakis, Office of U.S. Trustee, Philadelphia, PA, for First Northern Bank and Trust.

## OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

This matter is before the Court on the Motion of First Northern Bank and Trust ("the Bank") to Compel Payment of Post–Petition Lease Obligations and for Other Relief ("the Motion") and on the Complaint for Declaratory Judgment and Related Relief ("the Complaint") filed by Colusa Community Hospital Association ("Colusa") and Chama, Inc. (collectively, "the Debtors"). The parties have agreed to consolidate the Motion and Complaint for argument and decision and have filed a Stipulation of Facts.

## I.  FACTS AND PROCEDURAL HISTORY

Colusa is a general acute care facility located in Colusa, California, which provides a variety of acute and long term care services in that community.

On or about March 20, 1996, the Bank and the City of Colusa ("the City") executed a Master Lease with Option to Purchase Agreement ("the Lease"). On that same day, the City and Colusa executed a Master Sublease with Option to Purchase Agreement ("the Sublease"). Chama (Colusa's parent company) guaranteed Colusa's obligations under the Sublease.

Pursuant to the Lease and Sublease, Colusa obtained legal title to certain heating and cooling equipment ("the Equipment") which was installed in the hospital facility. Colusa continues to use the Equipment in its business operations.

The parties have stipulated that the Lease and Sublease were not true leases but were instead financing arrangements. The total amount financed by the Bank pursuant to the Lease was $575,459.12; the balance the Bank asserts was due as of the Petition Date is $452,218.73 (not including interest, attorneys' fees and costs).

The Bank filed a UCC–1 financing statement on April 8, 1996, against the City, identifying the Equipment as the collateral in which it asserted a security interest. Neither the Bank nor the City filed a UCC–1 against Colusa.

On October 6, 1998 ("the Petition Date"), the Debtors, together with other affiliates, filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

## II.  ARGUMENT

The Bank asserts that it has a perfected security interest in the Equipment, there-

---

1.  This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

by entitling it to adequate protection. The Debtors, and the Official Unsecured Creditors' Committee ("the Committee") which supports the Debtors, assert that the security interest of the Bank never attached and was never perfected and is, therefore, avoidable. The parties agree that the dispute is governed by California law and, in fact, both sides rely on the same case law to support their position. *See, K.N.C. Wholesale, Inc. v. AWMCO, Inc.,* 56 Cal. App.3d 315, 128 Cal.Rptr. 345 (1976).

### A. *Attachment*

■ Under section 9203(1) of the California Uniform Commercial Code, a security interest in property does not attach against a debtor (or any third party) until (a) the debtor has signed a security agreement, (b) value has been given, and (c) the signing debtor has rights in the collateral. Cal.Comm.Code § 9203(1).

The Bank asserts that its security interest in the Equipment was created by the Lease and UCC–1 signed by the City. It asserts that the security interest attached because (a) the City signed the Lease and UCC–1, (b) value was given to the City because it allowed Colusa to continue to operate thereby providing services to the community,[2] and (c) the City obtained rights in the Collateral.

The Debtors assert that the Bank's security interest in the Equipment never attached because the City never obtained any interest in the Equipment. The Debtors point to the Lease and Sublease which both state that legal title to the Equipment vested in Colusa. *See* Lease at § 6.1 and Sublease at § 8.1.

■ However, the "[California] Commercial Code recognizes that a debtor who does not own collateral may nonetheless use the collateral for security, thereby obtaining 'rights in the collateral,' when authorized to do so by the actual owner of the collateral." *K.N.C.,* 56 Cal.App.3d at 318–19, 128 Cal.Rptr. 345, *citing* Cal. Comm.Code §§ 9112 & 9105(1)(d) and Comments.

In the instant case, the owner of the collateral (Colusa) authorized the City to pledge the Equipment as security in favor of the Bank. The Sublease, signed by Colusa, provides: "Simultaneously with the delivery [of the Equipment], [Colusa] and [the City] shall take all actions necessary to vest legal title to the Equipment Group in [Colusa], and to perfect a security interest therein in favor of [the Bank] or a person, firm or corporation designated by it." *See* Sublease at § 3.2. Thus, it is clear that the owner of the Equipment, Colusa, authorized the City to pledge a security interest in the Equipment in favor of the Bank. This is sufficient under California law for the security interest to attach to the collateral. *K.N.C.,* 56 Cal.App.3d at 318–19, 128 Cal.Rptr. 345.

### B. *Perfection*

■ The Bank originally argued that it had a security interest in the Equipment because the City's security interest in the Equipment was transferred to it. *See* Sublease §§ 8.2 and 11.1. However, the Bank apparently concedes that any security interest which the City held in the Equipment was never perfected because the City never filed a UCC–1 financing statement signed by Colusa. The Bank instead relies on the UCC–1 signed by the City in favor of the Bank as evidence of perfection of its security interest in the Equipment.

---

**2.** In fact the City Council passed a Resolution approving the Lease and Sublease arrangement as being in the best interest of the City. *See* Exhibit A to the Reply Brief of the Bank.

The Debtors assert, however, that the Bank's security interest was not perfected because the financing statement on which it relies was not also signed by Colusa. They rely on the *K.N.C.* decision to support this position.

The *K.N.C.* Court, after finding that the security interest attached as noted above (because the owner had consented to the pledge of that collateral by the non-owner debtor), nonetheless concluded that the security interest was not perfected because the UCC–1 was not signed by the owner and did not contain the owner's name. The *K.N.C.* Court concluded that the requirements of section 9402(1) that a financing statement include the "debtor's" signature and name, required the owner's signature and name if the owner and debtor are not the same person. The Court stated:

> In cases where the "debtor" is not the owner but has only obtained his rights in the collateral due to the owner's permission, a financing statement in the name of the "debtor" alone fails to give subsequent creditors of the owner any notice that the collateral is subject to a prior security interest. To avoid such potential fraud or misrepresentation, the term "debtor" as used in section 9402 must be taken as referring to both the actual debtor and the owner of the collateral, i.e., both names are required on the financing statement to perfect the security interest.

56 Cal.App.3d at 319–20, 128 Cal.Rptr. 345. Consequently, the *K.N.C.* Court concluded that the security interest was not perfected by a financing statement in the name of the non-owner alone. *Id.*

The Bank asserts that section 9306(2) of the California Commercial Code supports its assertion that it perfected an interest in the Equipment. That section provides: "Except where this division otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party." Cal.Com.Code § 9306(2). California courts have interpreted this section as providing for continuation of the security interest in transferred property unless the secured party consents to the transfer of the property *free of its lien. See, e.g., Central California Equipment Co. v. Dolk Tractor Co.,* 78 Cal.App.3d 855, 144 Cal. Rptr. 367 (1978).

The Bank asserts that, although it consented to the transfer of the Equipment to Colusa, it did not consent to the transfer free of its lien. Rather, the Lease and Sublease both confirm that the Bank's lien was to remain on the Equipment. *See* Lease at § 6.2; Sublease at § 3.2. Thus, the Bank argues its lien on the Equipment remained despite the transfer of the Equipment to Colusa.

However, the Bank fails to appreciate that the facts of this case are different from those under section 9306. *See, e.g., In re Southern Properties, Inc.,* 44 B.R. 838, 843–44 (Bankr.E.D.Va.1984) (perfected security interest remained in collateral transferred to another). Those cases deal with situations where the security interest attached, was perfected and later the collateral was transferred. Here, the Bank's security interest never was perfected. Further, there never was a transfer of the collateral from the City *to* Colusa. Thus, section 9306 is not applicable and this case is governed by the *K.N.C.* decision.

The Bank, at oral argument[3], asserted that the decision in *K.N.C.* on this point

---

**3.** Because this issue was raised at argument, we permitted the parties to brief this issue after the hearing.

had been overruled by changes to section 9402(7) of the California Commercial Code which took effect in 1974. The last sentence of that section, as amended, provides: "A filed financing statement remains effective with respect to collateral transferred by the debtor even though the secured party knows of or consents to the transfer." Cal.Comm.Code § 9402(7).

Comment 8 to that section, the Bank asserts, supports its conclusion: "Subsection (7) also deals with a different problem, namely whether a new filing is necessary where the collateral has been transferred from one debtor to another. This question has been much debated both in pre-Code law and under the Code. This Article now answers the question in the negative. *Thus, any person searching the condition of the ownership of a debtor must make inquiry as to the debtor's source of title, and must search in the name of the former owner if circumstances seem to require it.*" Cal.Comm.Code § 9402, Comment 8 (emphasis added).

The Bank argues, therefore, that pursuant to section 9402(7) it did not have to file a financing statement naming Colusa. It asserts that anyone searching Colusa's source of title in the Equipment would discover that it was encumbered by the Bank's lien. All they would have to do is look at the Sublease. *See* Sublease § 3.2.

However, we conclude that the *K.N.C.* decision was not overruled by the 1974 amendments to section 9402(7) because that section does not apply to the facts of that case—or this came.[4] Section 9402(7) (like section 9306) applies to situations where a security interest has attached and been perfected and then the collateral is transferred to another. In this case, there

was no perfection of the Bank's security interest in the Equipment because the UCC-1 did not contain the name of the owner of the collateral. Nor was there a subsequent transfer of the Equipment from the City to Colusa; the Equipment was at all times owned by Colusa. Therefore, section 9402(7) is simply not applicable to this case.

Further, we find no evidence that the *K.N.C.* decision has been overruled by the 1974 amendments. In fact, it is still cited as good authority on the point of law on which we rely. *See, e.g., Reeves Entertainment Group v. LBS Communications, Inc.,* 1991 WL 135476 at *3 (S.D.N.Y.1991) (UCC-1 which fails to identify owner and debtor is invalid and fails to perfect security interest); *In re Whatley,* 874 F.2d 997, 1005 (5th Cir.1989) (concludes that *K.N.C.* decision is not inconsistent with its conclusion that financing statement signed by individual owner—although on behalf of debtor corporation—was sufficient to perfect security interest); *Pontchartrain State Bank v. Poulson,* 684 F.2d 704, 708 (10th Cir.1982) (where the party granting a security interest is not the owner of the collateral, both the owner and the debtor must sign the financing statement to perfect the security interest).

In fact, a treatise on California Commercial Code law cites *K.N.C.* as controlling authority for the following:

> Where the debtor and the owner are not the same person, i.e., where the debtor has obtained rights in the collateral only by permission of the owner, a financing statement in the name of the debtor alone fails to give subsequent creditors of the owner any notice that the collateral is subject to a prior security interest.

---

4. The Debtors argued that *K.N.C.* was not overruled by the 1974 amendments because it was decided in 1976. Although the *K.N.C.* decision was issued in 1976, the financing statement in question in that case was filed in 1972 and, therefore, was not subject to the 1974 amendments. 56 Cal.App.3d at 317, 128 Cal.Rptr. 345.

To avoid such potential fraud, the term "debtor" in U.C.C. § 9402 must be taken to mean "both the actual debtor and the owner of collateral"; i.e., both names are required on the financing statement.

*See, generally,* 3 Witkin, Summary of Cal. Law (9th ed., 1987) at Chapter VI.

Thus, we conclude that *K.N.C.* is still binding authority under California law. Since the facts of this case are identical to those of *K.N.C.*, we conclude that the financing statement filed by the Bank did not perfect a security interest in the Equipment because it failed to include the name of the owner, Colusa.

### C. Avoidance

The Debtors assert that because the Bank failed to perfect its security interest in the Equipment, its security interest is voidable under sections 544(a)(1) and 545(2) of the Bankruptcy Code.

#### 1. Avoidance under section 544(a)(1)

■ Section 544(a)(1) of the Code, provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by—

(1) a creditor that extends credit to the debtor at the time of commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists. . . .

11 U.S.C. § 544(a)(1). Pursuant to section 1107(a), a debtor in possession is entitled to exercise all of the powers and assume the status of a trustee under section 544. *See In re Kitchin Equipment Co. of Virginia, Inc.,* 960 F.2d 1242, 1245 (4th Cir. 1992); *In re Dunes Hotel Associates,* 194 B.R. 967, 977 (Bankr.D.S.C.1995); *In re Greenbelt Cooperative, Inc.,* 124 B.R. 465, 471 (Bankr.D.Md.1991). The powers conferred under section 544 are not affected by any knowledge that a trustee, debtor or creditor may have. *McCannon v. Marston,* 679 F.2d 13, 16 (3d Cir.1982).

■ Where a creditor has failed to perfect a security interest under applicable state law, the security interest is avoidable under section 544. *See, e.g., In re Pacific Express, Inc.,* 780 F.2d 1482 (9th Cir.1986) (creditor never took steps to perfect); *In re McCauley's Reprographics, Inc.,* 638 F.2d 117 (9th Cir.1981) (improperly identified debtor as predecessor partnership instead of corporation); *In re Kim,* 161 B.R. 831 (9th Cir. BAP 1993) (defective abstract of judgment by judgment lien holder). Since the Bank did not perfect its security interest in the Equipment under the provisions of the California Commercial Code as detailed above, its claim is voidable under section 544(a)(1).

#### 2. Avoidance under section 545(2)

Section 545(2) of the Bankruptcy Code is equally applicable as a means of avoiding the Bank's secured claim with respect to the Equipment. Section 545(2) provides that the trustee may avoid a lien that "is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such purchaser exists." 11 U.S.C. § 545(2); *see also In re Loretto Winery, Ltd.,* 898 F.2d 715, 718 (9th Cir.1990).

As set forth above, the Bank failed to perfect its security interest in the Equip-

ment. As a result, its lien would be junior to that of a bona fide purchaser, and is voidable in accordance with section 545(2). *See In re Aikens,* 94 B.R. 869 (Bankr. E.D.Pa.1989) (failure of city of Philadelphia to docket lien renders lien unperfected and subject to avoidance under section 545(2)).

### D. *Adequate Protection*

█ Since the Bank's security interest is avoided, it is a general unsecured creditor. It is therefore, not entitled to any adequate protection. *See, e.g., In re Gallegos Research Group,* 193 B.R. 577, 584 (Bankr.D.Colo.1995) (creditor is entitled to adequate protection of their secured liens); *Unsec'd Creditors' Committee v. Jones Truck Lines, Inc.,* 156 B.R. 608, 610 (W.D.Ark.1992) (doctrine of adequate protection is defined to ensure that secured creditor receives value for which he bargained); *In re Microwave Products of America, Inc.,* 94 B.R. 967, 970 (Bankr. W.D.Tenn.1989) (seller who failed to file UCC–1 was an unsecured creditor not entitled to adequate protection); *In re Simasko Production Co.,* 47 B.R. 444, 448–49 (Bankr.D.Colo.1985) (unsecured creditor has no interest for which adequate protection must be provided).

### III. *CONCLUSION*

For the reasons set forth above, the Bank does not have a perfected security interest in the Equipment, its security interest is avoidable, and it is not entitled to adequate protection.

An appropriate Order is attached.

### *ORDER*

**AND NOW,** this **26TH day** of **APRIL, 2000,** upon consideration of the Motion of

First Northern Bank and Trust ("the Bank") to Compel Payment of Post–Petition Lease Obligations and for Other Relief ("the Motion") and on the Complaint for Declaratory Judgment and Related Relief ("the Complaint") filed by Chama, Inc., and Colusa Community Hospital Association ("Colusa") (collectively, "the Debtors"), for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the Motion of First Northern Bank and Trust to Compel Payment of Post–Petition Lease Obligations and for Other Relief is hereby **DENIED;** and it is further

**ORDERED** that the security interest asserted by the Bank in the Equipment owned by Colusa Community Hospital Association is hereby **AVOIDED** pursuant to 11 U.S.C. §§ 544(a)(1) and 545(2).

### *MEMORANDUM OPINION*[1]

### I. *INTRODUCTION*

The issue before this Court is the Motion of First Northern Bank and Trust ("the Defendant") for Reconsideration and Reargument of our Opinion and Order dated April 26, 2000. In the April 26 decision, we held that the Defendant did not have a perfected interest in certain equipment and was not entitled to adequate protection. The basis for the Defendant's motion is an alleged mistake of fact by this Court in finding that title to the equipment was never transferred from the Defendant to the City of Colusa ("the City"). The Official Unsecured Creditors' Committee ("the Committee") and Chama, Inc. ("the Debtor"), have both opposed the Defendant's motion, asserting that the Defendant simply seeks another bite at the apple. As discussed herein, the Court agrees with

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

the Committee and the Debtor and, therefore, denies the Defendant's motion.

## II. *DISCUSSION*

■ A motion for reconsideration under Federal Rule of Bankruptcy Procedure 9023 is an extraordinary means of relief in which the movant must do more than simply reargue the facts of the case or legal underpinnings. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995) (a motion to reconsider must rely on one of three major grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error [of law] or prevent manifest injustice") (quoting *Natural Resources Defense Council v. United States Envtl. Protection Agency*, 705 F.Supp. 698, 702 (D.D.C.1989)); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 908 (3d Cir.1985) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence"); *Dentsply Int'l., Inc. v. Kerr Mfg. Co.*, 42 F.Supp.2d 385, 417 (D.Del.1999) ("[motions for reargument] should be granted sparingly and should not be used to rehash arguments already briefed or allow a 'never-ending' polemic between the litigants and the Court").

The Defendant cites three cases in support of a lower standard which would allow reconsideration and reargument where: (1) the Court made any error of law or fact and (2) would have rendered a different result if it had been aware of the mistake. *See Walsh v. State of Delaware*, 1993 WL 837872 (D.Del. May 5, 1993); *Karr v. Castle*, 768 F.Supp. 1087 (D.Del.1991), *aff'd*, 22 F.3d 303 (3d Cir.1994), *cert denied*, 513 U.S. 1084, 115 S.Ct. 739, 130 L.Ed.2d 641; *Bill's Dollar Stores, Inc. v. New Orleans Printing Svcs., Inc.*, 200 B.R. 18, 19

(Bankr.D.Del.1994). These cases were all decided prior to the Third Circuit's decision in *North River*, however, and to the extent they suggest a lower standard, they are no longer good law.

■ We are bound by, and therefore follow, the standards elucidated by the Third Circuit in *North River*. The Defendant has not argued that there is any new evidence or a change in controlling case law; therefore the Defendant's motion can be premised only upon a "manifest" or "clear" error.

In this case, the facts were presented by stipulation which stated that the Debtor acquired legal title to the equipment under the lease and sublease which were made part of the record. The stipulation never squarely addressed the issue of whether the City ever held title.

However, the Defendant had the opportunity to brief the issue, and did, in fact, raise the issue in the Background Facts section of its Opening Brief in which it asserted: "[p]ursuant to the Lease, the City assigned all of its right, title and interest in and to the Sublease ... to First Northern." Moreover, the issue of whether the City obtained rights in the collateral was discussed in the argument sections of both parties' briefs.

We reviewed the parties' arguments (including the Defendant's argument that the City obtained rights in the Collateral which were sufficient to permit perfection under California law), and the documents submitted in support thereof, and concluded that the City never held title to the equipment at issue because "the equipment was at all times owned by Colusa." *Opinion*, dated April 26, 2000 at page 667.[2]

---

2. While we may not have explained our original decision as fully as we might have, it

seems clear to us that the issue of whether title ever vested in the City was obvious from

### III. CONCLUSION

Having already reviewed this once, and for the reasons set forth above, we now conclude that we have not made a "clear" or "manifest" error. The Defendant has therefore failed to meet the standards required for reconsideration or reargument. Accordingly, the Defendant's motion is denied.

the documents. Subsection 6.1 of the lease between the Defendant and the City, which was labeled "TITLE," provides: "[s]o long as an event of default has not occurred … legal title to the Equipment … shall be in Sublessee [Debtor–Colusa] pursuant to the Sublease. Upon the occurrence of an event of default … legal title to the Equipment shall pass to Lessor [Defendant], and [City] and [Colusa] shall have no further interest therein."

Section 3.3 of the lease, labeled "Lease; Enjoyment; Inspection" (which the Defendant now urges us to read as evidence of the City's title) did not dissuade us in our conclusion. The section labeled "TITLE" section is more convincing indicia of who actually held title to the Equipment.